OPINION
GILDEA, Chief Justice.
Minnesota law makes it a crime for a driver to refuse a request to take a chemical test to detect the presence of alcohol if certain conditions are met, including that the driver has been validly arrested for driving while impaired. Minn.Stat. § 169A.20, subd. 2 (2014). The question presented in this case is whether Minn. Stat. § 169A.20, subd. 2 (“test refusal statute”), violates appellant William Robert Bernard’s right to due process under the United States or Minnesota Constitutions by criminalizing his refusal to consent to an unconstitutional search. The district court held the test refusal statute was unconstitutional as applied to Bernard, but the court of appeals reversed. Because we conclude that the breath test the police asked Bernard to take would have been constitutional as a search incident to a valid arrest, and as a result, charging Bernard with criminal test refusal does not implicate a fundamental right, and that the test refusal statute is a reasonable means to a permissive object, we affirm.
This case arises from a report that police received on August 5, 2012, that three intoxicated men were attempting to get a boat out of the water at á boat launch in South Saint Paul. When police arrived at the boat launch, a witness told the officers that the men’s truck became stuck in the river while they were trying to pull their boat out of the water. The witness also said that the driver of the truck was in his underwear. The officers approached the three men and saw that the truck’s axle was hanging over the edge of the pavement. One of the men, appellant William Robert Bernard, was in his underwear. The officers could smell a strong odor of alcohol coming from the group. Bernard admitted to police that he had been drinking, but he and the other men denied driving the track. Several additional witnesses identified Bernard as the driver and described him stumbling from the boat to the track. As the officers questioned Bernard, they noted that his breath smelled of alcohol, he had bloodshot, watery eyes, and he was holding the keys to the track. Bernard refused to perform field sobriety tests.
The officers arrested Bernard on suspicion of driving while impaired (“DWI”) and took him to the South Saint Paul police station. The officers read Bernard the Minnesota Implied Consent Advisory as required by Minn.Stat. § 169A.51, subd. 2 (2014). Specifically, police advised Bernard that Minnesota law required him to take a chemical test, that refusal to take a test was a crime, and that he had a right *765 to consult with an attorney so long as there was not an unreasonable delay in the administration of the test. Police also gave Bernard an opportunity to contact an attorney. Bernard called his mother instead. After the call to his mother, Bernard told the officers he did not need any more time and refused to take a breath test.
The State charged Bernard with two counts of first-degree test refusal, Minn. Stat. §§ 169A.20, subd. 2, 169A.24 (2014).[1] Bernard filed a motion to dismiss, arguing that the test refusal statute violated due process because the statute makes it a crime to refuse an unreasonable, warrant-less search of a driver’s breath. The district court ruled that the test refusal statute was not unconstitutional on its face but dismissed the charges after concluding that the police lacked a lawful basis to search Bernard without a warrant. The court of appeals reversed, holding that prosecuting Bernard for refusal to take a breath test did not violate his due process rights because the facts of the case established that the officers had probable cause and could have secured a warrant to search Bernard’s breath. We granted review.
I.
The test refusal statute, Minn.Stat. § 169A.20, subd. 2, makes it a crime to refuse a chemical test administered to detect the presence of alcohol in certain circumstances. Id. (“It is a crime for any person to refuse to submit to a chemical test of the person’s blood, breath, or urine under section 169A.51 (chemical tests for intoxication) or 169A.52 (test refusal or failure; revocation of license).”). These circumstances include when an officer has probable cause to believe the person was driving, operating, or in physical control of a motor vehicle while under the influence of alcohol and the police have read the person the implied-consent advisory. See Minn.Stat. § 169A.51, subds. 1-2.
Bernard argues that Minnesota’s test refusal statute, as applied to him, violates his right to substantive due, process because it criminalizes his Fourth Amendment right to refuse an unconstitutional, warrantless search.[2] The Fourth Amendment protects “[t]he right of the people to be secure in their persons, houses, papers, *766 and effects, against unreasonable searches and seizures.”[3] U.S. Const, amend. IV. The “ultimate measure” of a permissible government search under the Fourth Amendment is reasonableness. Vernonia Sch. Dist. 47J v. Acton, 515 U.S. 646, 652, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995). Because Bernard bases his due process argument on a Fourth Amendment violation, we turn first to the question of whether a warrantless search of Bernard’s breath would have been constitutional under the Fourth Amendment.
A.
The court of appeals held that the criminaF charges against Bernard for refusing the breath test were constitutional under the Fourth Amendment because the officer had probable cause to believe that Bernard was driving under the influence and the officer could have sought and received a warrant based on that evidence. State v. Bernard, 844 N.W.2d 41, 47 (Minn.App.2014). The court did not find an exception to the warrant requirement for the-search of Bernard’s breath. Id. at 45-46. Instead, it concluded that probable cause sufficient to support a warrant was enough to support the criminal test-refusal charge. Id.
The court of appeals’ analysis is contrary to basic principles of Fourth Amendment'law. A warrantless search is generally unreasonable, unless it falls into one of the recognized exceptions to the warrant requirement. State v. Flowers, 734 N.W.2d 239, 248 (Minn.2007). On several occasions, the U.S. Supreme Court has explicitly rejected an exception to the warrant requirement based upon probable cause alone. See, e.g., Katz v. United States, 389 U.S. 347, 356-57, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); Beck v. Ohio, 379 U.S. 89, 96, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). We have also recognized that there is no probable cause exception to the warrant requirement. See State v. Ortega, 770 N.W.2d 145, .149 n. 2 (Minn.2009). Consistent with this precedent, we refuse to embrace the rule the court of appeals applied in this case.
Although the court of appeals’ reasoning does not provide a basis for a constitutional search, the State advances several other theories for why a search of Bernard’s breath would have been constitutional. One such argument is that police could have conducted a warrantless search of Bernard’s breath as a search incident to a valid arrest. Bernard contends that because there is nothing he can do to destroy the evidence of alcohol concentration in his body, the search-incident-to-arrest exception does not apply to a search of his breath under Arizona v. Gant, 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009), and Missouri v. McNeely, — U.S. -, 133 S.Ct. 1552, 185 L.Ed.2d 696 (2013).
A search incident to a lawful arrest is a well-recognized exception to the warrant requirement under the Fourth Amendment. Gant, 556 U.S. at 338, 129 S.Ct. 1710; see also Weeks v. United States, 232 U.S. 383, 392, 34 S.Ct. 341, 58 L.Ed. 652 (1914) (explaining that the right “to search the person of the accused when legally arrested to discover and seize the fruits or evidences of crime” has been “uniformly maintained” in many cases “under English and American law”), overruled on other grounds by Elkins v. United *767 States, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960). Under this exception, the police are authorized to conduct a “full search of the person” who has been lawfully arrested. United States v. Robinson, 414 U.S. 218, 235, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). Our- court has allowed searches of the body beyond a pat down of those police have lawfully arrested. For example, we have held that the warrant-less inspection of an arrested man’s penis was a valid search incident to arrest, noting that someone “lawfully subjected to a custodial arrest retains no significant Fourth Amendment interest in the privacy of his person.” State v. Riley, 303 Minn. 251, 254, 226 N.W.2d 907, 909 (1975). We have also upheld the taking of fingerprints and photographs of someone who has been arrested. State v. Bonner, 275 Minn. 280, 287, 146 N.W.2d 770, 775 (1966); see also State v. Emerson, 266 Minn. 217, 221, 123 N.W.2d 382, 385 (1963) (noting that subjecting an arrested man to photographs, X-rays, and a medical examination did not violate his due process rights).
Taking a sample of an arrestee’s breath is not materially different from the war-rantless searches upheld in these cases.[4] Based on this authority, we conclude that a warrantless breath test of Bernard would not have violated the Fourth Amendment because it is a search incident to Bernard’s valid arrest.
Our conclusion that a warrantless breath test does not violate the Fourth Amendment because it falls under the search-ineident-to-a-valid-arrest exception is consistent with decisions from other courts. See, e.g., United States v. Reid, 929 F.2d 990, 994 (4th Cir.1991) (holding that breathalyzer tests were reasonable searches under the Fourth Amendment because they were searches incident to lawful arrests); Burnett v. Municipality of Anchorage, 806 F.2d 1447, 1450 (9th Cir.1986) (“It is clear then that the breathalyzer examination in question is an appropriate and reasonable search incident to arrest which appellants have no constitutional right to refuse.”); Byrd v. Clark, 783 F.2d 1002, 1005 (11th Cir.1986) (holding that “officers would have been justified in conducting a [breath] search” under the search-incident-to-arrest exception); Wing v. State, 268 P.3d 1105, 1110 (Alaska Ct.App.2012) (holding that a breath test was a valid search incident to arrest); State v. Dowdy, 332 S.W.3d 868, 870 (Mo.Ct.App. 2011) (same); State v. Hill, No. 2008-CA-0011, 2009 WL 1485026, at *5 (Ohio Ct. App. May 22, 2009) (same); Commonwealth, Dep’t of Transp. v. McFarren, 514 Pa. 411, 525 A.2d 1185, 1188 (1987) (same).[5] Indeed, our research has not re *768 vealed a single case anywhere in the country that holds that a warrantless breath test is not permissible under the search-incident-to-a-valid-arrest exception.[6]
B.
Bernard and the dissent argue, however, that the Supreme Court has been retracting the scope of searches that are constitutional under the search-incident-to-arrest exception. To support this argument, Bernard relies on Arizona v. Gant, 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485. Gant, however, did not address a search of a person; Gant involved the search of the area from which the defendant was arrested, specifically, the defendant’s automobile. 556 U.S. at 336, 129 S.Ct. 1710. As Bernard notes, the Court discussed that the search-incident-to-a-valid-arrest exception derives from concerns over officer safety and a desire to preserve evidence. Id. at 338, 129 S.Ct. 1710. Because the police had secured the defendant in the back of a squad car, these concerns were nonexistent in Gant and the Court held that the warrantless search of the defendant’s automobile did not fall under the search-incident-to-arrest exception. Id. at 351, 129 S.Ct. 1710.
Similar to Gant, Bernard argues that the State in this case cannot show that a search of his breath was related to officer safety or concerns that he would destroy evidence. That may be true,[7] but it does not compel the conclusion that the search-incident-to-arrest exception does not apply here. This is so because there are two distinct types of searches that fall within the exception. Robinson, 414 U.S. at 224, 94 S.Ct. 467. First, police may conduct a search “of the person of an arrestee by virtue of the lawful arrest.” Id. Second, a search may be made of the area within the immediate control of the *769 arrestee. Id. It is the first type of search — the search of the arrestee’s person — that is relevant here.
There is no question that the Court has required either a concern for officer safety or a concern over the preservation of evidence to support the constitutionality of a warrantless search of the area where the defendant was arrested or a search of items near the defendant. But the Court has not applied these concerns as a limitation on the warrantless search of the body of a person validly arrested. A brief review of the Court’s cases illustrates this distinction.
In Chimel v. California, the U.S. Supreme Court held that following an arrest, a police officer may search the person of the arrestee and the area within his or her immediate control to remove weapons and to seize evidence. 395 U.S. 752, 762-63, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). The Court explained that the search promoted officer safety and prevented the destruction or concealment of evidence. Id. at 763, 89 S.Ct. 2034. A search of the arres-tee’s entire home, however, was not justified as a search incident to arrest. Id.
A few years later, in United States v. Robinson, the Court clarified the justification for the search of a person under the search-incident-to-arrest exception. In Robinson, a police officer arrested the defendant for driving with a revoked license and subsequently performed a patdown search. 414 U.S. at 220-23, 94 S.Ct. 467. The officer pulled an unidentified object from the defendant’s pocket and discovered that it was a cigarette package. Id. at 223, 94 S.Ct. 467. Upon opening the package, the officer found 14 capsules of heroin. Id. The Court held that the police lawfully discovered the heroin as part of a search incident to arrest. Id. at 236, 94 S.Ct. 467.
Through its holding, the U.S. Supreme Court overruled the analysis from the United States Court of Appeals for the District of Columbia Circuit. Id. at 237, 94 S.Ct. 467. The court of appeals concluded that the search-incident-to-arrest exception did not apply. United States v. Robinson, 471 F.2d 1082, 1108 (D.C.Cir.1972). The exception did not apply because the police did not have reasonable grounds to believe that the defendant, who police arrested for driving after license revocation, would have any additional evidence of the crime on his person, and because there was no evidence that police were concerned for their safety when they searched the defendant. Id. at 1094, 1098 (D.C.Cir.1972). The Supreme Court termed these limitations, within the context of a search of the person of a validly arrested defendant, as “novel” and rejected them. Robinson, 414 U.S. at 229, 94 S.Ct. 467. Rather than constricted by the limitations the appellate court had adopted, the Supreme Court referred to the police’s “authority” to search an arrested person as “unqualified.” Id. The Court held that “in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a ‘reasonable’ search under that Amendment.” Id. at 235, 94 S.Ct. 467 (emphasis added). In other words, in Robinson, the Court characterized a warrant-less search of a person as categorically reasonable under the Fourth Amendment as a search incident to that person’s valid arrest. See McNeely, — U.S. at -, 133 S.Ct. at 1559 n. 3 (citing Robinson).
Subsequent cases have addressed and limited the second type of search under the search-incident-to-arrest exception, a search of the area or things within the immediate control of the arrestee, but they have not narrowed the exception with respect to a search of the arrestee’s body. *770 See Gant, 556 U.S. at 351, 129 S.Ct. 1710 (holding that the “[p]olice may search a vehicle incident to a recent occupant’s arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search”); United States v. Chadwick, 433 U.S. 1, 14-15, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977) (holding that a locked footlocker seized at the time of a defendant’s arrest could not be justified as a search of the area within the arrestee’s immediate control “if the ‘search is remote in time or place from the arrest’ ” or if the police have exclusive control of the property and “there is no longer any danger that the arrestee might gain access to the property” (quoting Preston v. United States, 376 U.S. 364, 367, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964))), abrogated on other grounds by California v. Acevedo, 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991).
Just last term, in Riley v. California, the Court áddressed whether police could, search a “particular category of effects”— digital data found within a cell phone seized during an arrest — without a warrant under the search-incident-to-arrest exception. — U.S. -, 134 S.Ct. 2473, 2485, 189 L.Ed.2d 430 (2014). In concluding that the police could not search data on the cell phone as a search incident to arrest, the Court reaffirmed “Robinson’s admonition that searches of a person incident to arrest ... are reasonable regardless of ‘the probability in a particular arrest situation that weapons or evidence would in fact be found.’ ” Id. at -, 134 S.Ct. at 2485 (quoting Robinson, 414 U.S. at 235, 94 S.Ct. 467). In a custodial arrest situation, those concerns are always present and do not need to be specifically identified or proven to justify a search. Id. at -, 134. S.Ct. at 2484-85. Therefore, far from overruling or narrowing Robinson, the Court recognized again Robinson’s “categorical rule,” which allows a search of the person of an arrestee justified only by the custodial arrest itself, and simply chose not to extend that categorical exception to digital data found within a cellphone. Id. at -, 134 S.Ct. at 2484.
The dissent reads Riley much differently than. we do. It claims the Supreme Court in Riley “confirmed that when it refers to a search of a person incident to arrest, as in Robinson, it is talking about personal property — that is, evidence— found on a person.” As support, the dissent cites to Riley’s discussion of Robinson, 414 U.S. at 235, 94 S.Ct. 467, and Chadwick, 433 U.S. at 15, 97 S.Ct. 2476. The dissent misreads Riley. [8]
*771 In discussing these two cases in Riley, the Court explained that in Robinson, “the Court did not draw a line between a search of Robinson’s person and a further examination of the cigarette pack found during that search.” Riley, — U.S. at -, 134 S.Ct. at 2484. The Court went on to explain that in Chadwick, it did make a distinction between a search of the person and the personal property, a footlocker that was in the exclusive control of law enforcement officers, found during that search. Id. at -, 134 S.Ct. at 2484. It “clarified that this exception [requiring no additional justification for the search] was limited to ‘personal property ... immediately associated with the person of the arrestee.’ ” Id. at -, 134 S.Ct. at 2484 (quoting Chadwick, 433 U.S. at 15, 97 S.Ct. 2476). The dissent relies on this last sentence to support its interpretation of Riley.
When this quote is put in context, it is clear that the Court was not limiting the categorical search of an arrestee’s body that may be performed as a search incident to arrest. Instead, the Court was explaining that Chadwick had limited the type of property that may be categorically searched as part of a search incident to arrest to property immediately associated with the arrestee. Moreover, because the searches being challenged in both Riley and Chadwick were not searches of the arrestee’s body itself, it is hard to see how those cases can be read to have placed restrictions on such a search.
In short, we reject as unpersuasive both Bernard’s and the dissent’s arguments that Gant and Riley require us to conclude that the search-incident-to-arrest exception does not apply to the warrantless search of his breath.
Bernard also argues that the search-incident-to-arrest exception cannot apply to a breath test under Missouri v. McNeely, — U.S. -, 133 S.Ct. 1552, 185 L.Ed.2d 696 (2013). The U.S. Supreme Court in McNeely, however, addressed only the exigent-circumstances exception to the warrant requirement. Id. at -, 133 S.Ct. at 1556 (addressing whether the “natural metabolization of alcohol in the bloodstream presents a per se exigency that justifies an exception to the Fourth Amendment’s warrant requirement for nonconsensual blood testing in all drunk-driving cases”). The government did not raise the search-incident-to-arrest exception in its argument to the Supreme *772 Court.[9] See Brief for Petitioner, Missouri v. McNeely, — U.S. -, 133 S.Ct. 1552, 185 L.Ed.2d 696 (2013) (No. 11-1425). In fact, McNeely only mentioned the search-incident-to-arrest exception by contrasting it with the exigent-circumstances exception to the warrant requirement, noting that unlike the exigent-circumstances exception, the search-incident-to-arrest exception is categorical and does not require a case-by-case assessment of the circumstances.[10] McNeely, — U.S. at -, 133 S.Ct. at 1559 n. 3. Therefore, the Supreme Court’s decision in McNeely does not foreclose our decision regarding the search-incident-to-arrest exception to the warrant requirement.
Based on our analysis above, the warrantless search of Bernard’s breath would have been reasonable as a search incident to his valid arrest. The undisputed facts of this case establish that the police had probable cause to arrest Bernard for DWI. Indeed, Bernard does not dispute that the police validly arrested him before asking him to submit to a breathalyzer test. The breath test was a search of Bernard’s person that would have been no more intrusive than the myriad of other searches of the body that we and other courts have upheld as searches incident to a valid arrest. See, e.g., Riley, 303 Minn, at 254, 226 N.W.2d at 909. We therefore conclude that a breath test is a search of the arrestee’s pferson and is justified by virtue of the lawful arrest itself. As a result, we hold that a warrantless breath test of Bernard would have been constitutional under the search-incident-to-arrest exception to the Fourth Amendment’s warrant requirement.[11]
*773 II.
We turn next to Bernard’s substantive due process challenge to the test refusal statute. The due process clauses of the United States and Minnesota Constitutions “prohibit ‘certain arbitrary, wrongful government actions, regardless of the fairness of the procedures used to implement them.’ ” Boutin v. LaFleur, 591 N.W.2d 711, 716 (Minn.1999) (quoting Zinermon v. Burch, 494 U.S. 113, 125, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990)); see also U.S. Const, amends. V, XIV; Minn. Const. art. I, § 7. When assessing a due process challenge, the analysis we apply depends on whether the statute implicates a fundamental right. Boutin, 591 N.W.2d at 716. Having decided that the search of Bernard’s breath would have been constitutional, we find no fundamental right at issue here, as Bernard does not have a fundamental right to refuse a constitutional search. See Washington v. Glucksberg, 521 U.S. 702, 720-21, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997) (stating that fundamental rights for purposes of substantive due process are those rights and liberties “which are, objectively, deeply rooted in this Nation’s history and tradition” and are “implicit in the concept of ordered liberty” (citations omitted) (internal quotation marks omitted)).
If a statute does not implicate a fundamental right, we assess its constitutionality using rational basis review. See State v. Behl, 564 N.W.2d 560, 567 (Minn.1997). To survive a due process challenge using rational basis review, the statute must not be “arbitrary or capricious.” Id.
We will uphold the statute as long as it is “a reasonable means to a permissive object.” Id. We review the constitutionality of statutes de novo. State v. Henning, 666 N.W.2d 379, 382 (Minn.2003).
The object of the Minnesota Impaired Driving Code, Minn.Stat. § 169A.01 et seq., is public safety. We have recognized the “severe threat” that impaired drivers pose to the public’s safety. Heddan v. Dirkswager, 336 N.W.2d 54, 62-63 (Minn.1983). Indeed, 30 percent of traffic deaths in Minnesota in 2013 were alcohol-related. Minn. Dep’t of Pub. Safety, Minnesota Motor Vehicle Crash Facts 2013 39 (2014). And we have said that “the state has a compelling interest in highway safety justifying efforts to keep impaired drivers off the road.” Bendorf v. Comm’r of Pub. Safety, 727 N.W.2d 410, 417 (Minn.2007) (citing Heddan, 336 N.W.2d at 63). Securing effective chemical tests to determine whether drivers suspected of being under the influence are in fact driving while impaired is reasonably related to the government’s interest in keeping impaired drivers off the road.
Encouraging drivers to submit to such tests, through criminalizing their refusal, furthers that interest. In fact, one study concludes that alcohol concentration test refusals compromise the enforcement of drunk-driving laws. Ralph K. Jones & James L. Nichols, Breath Test Refusals and Their Effect on DWI Prosecution 42 (2012) (concluding that “[a]s statewide refusal rates increased, overall conviction rates ... decreased”). And another study *774 finds that Minnesota’s test refusal statute has led to a lower refusal rate and an increased conviction rate for alcohol-related offenses, including driving under the influence and test refusal. H.L. Ross, et al., Causes and Consequences of Implied Consent Test Refusal, 11 Alcohol, Drugs and Driving 57, 71-72 (1995).
In sum, it is rational to conclude that criminalizing the refusal to submit to a breath test relates to the State’s ability to prosecute drunk drivers and keep Minnesota roads safe. We therefore hold that the test refusal statute is a reasonable means to a permissive object and that it passes rational basis review.
Affirmed.
Dissenting, PAGE and STRAS, JJ.

. A person is guilty of first-degree driving while impaired or criminal test refusal if that person "commits the violation within ten years of the first of three or more qualified prior impaired driving incidents.” Minn.Stat. § 169A.24, subd. 1(1). A "qualified prior impaired driving incident" includes prior impaired driving convictions. . Minn.Stat. § 169A.03, subd. 22 (2014). Bernard has four impaired driving convictions since 2006.

. Bernard's brief states that "the district court should have found the statute unconstitutional on its face." But Bernard makes no argument in his brief explaining how the statute is unconstitutional in all applications. United States v. Salerno, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) (stating that a facial challenge is “the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid”). Instead, Bernard’s brief is devoted to arguing that Minnesota's test refusal law is unconstitutional as applied to him in this case. We therefore treat Bernard’s appeal as an as-applied challenge. See Melina v. Chaplin, 327 N.W.2d 19, 20 (Minn.1982) (stating that an issue "not argued in the briefs” is waived). In addition, counsel for Bernard seemed to make a broader argument at the hearing on this matter, asserting that the statute is unconstitutional on its face because there is not a categorical exception to make all warrantless breath tests under the statute constitutional. We will not consider this argument because Bernard did not raise it in his brief. State v. Morrow, 834 N.W.2d 715, 724 n. 4 (Minn.2013) (stating that an issue argued at oral argument, but not raised in the briefs is waived).

. Bernard also references the Minnesota Constitution’s prohibition against unreasonable searches and seizures. See Minn. Const, art. I, § 10. Bernard, however, is not asking us to extend broader search and seizure protection under the Minnesota Constitution than what the Fourth Amendment affords.

. The dissent argues that our holding "fundamentally departs from longstanding Fourth Amendment principles.” A search of an ar-restee’s breath, however, is not a departure from search-incident-to-arrest exception case law. Courts have upheld a variety of searches that included the removal of biological material and searches within the arres-tee’s body as valid searches incident to arrest. See United States v. D’Amico, 408 F.2d 331, 332-33 (2d Cir.1969) (upholding the warrant-less seizure of a few strands of the arrestee’s hair); Espinoza v. United States, 278 F.2d 802, 804 (5th Cir.1960) (upholding a forcible search of an arrestee's mouth for narcotics). Courts have also upheld chemical testing conducted on parts of a defendant’s body as a search incident to arrest. See United States v. Johnson, 445 F.3d 793, 795-96 (5th Cir.2006) (upholding gunpowder residue testing done on defendant's hands as a search incident to arrest); Jones v. State, 213 Md.App. 483, 74 A.3d 802, 812-13 (2013) (same and citing other cases so holding); State v. Riley, 201 W.Va. 708, 500 S.E.2d 524, 533 (1997) (same); Sen v. State, 301 P.3d 106, 117-18 (Wyo.2013) (same).

. The dissent claims that our conclusion is unprecedented because our holding authorizes the collection of biological material from inside the defendant’s body as a lawful search *768 incident to arrest. The dissent is mistaken. As the cases we cited above indicate, courts for nearly 30 years have found a breath test is a lawful search incident to arrest. The dissent does not, and indeed cannot, cite any Supreme Court case holding that a search incident to arrest does not apply to biological material.

. The dissent is unable to find any contrary authority. Other courts, including the Texas Court of Criminal Appeals in the case cited by the dissent, have held that a blood test cannot be justified by the search-incident-to-arrest exception. See, e.g., State v. Baker, 502 A.2d 489, 492-93 (Me. 1985) (rejecting the search-incident-to-arrest exception as justifying a warrantless blood draw, but upholding the test under the exigent circumstances exception); State v. Stem, 150 N.H. 705, 846 A.2d 64, 68 (2004) (suggesting that exigent circumstances is the only exception that can justify a warrantless blood draw); State v. Welch, 316 N.C. 578, 342 S.E.2d 789, 794 (1986) (same); State v. Villarreal, — S.W.3d -, -, 2014 WL 6734178, at *18 (Tex.Crim.App. Nov. 26, 2014) (holding that the search-incident-to-arrest exception cannot justify a warrantless blood draw). Although not in the context of driving while impaired, we have also determined that a warrantless blood sample search was unconstitutional. State v. Campbell, 281 Minn. 1, 10, 161 N.W.2d 47, 54 (1968) ("[A]bsent unusual circumstances, an intrusion upon the body of a citizen should properly be made only by authority of a warrant issued by a magistrate, for it is a search and seizure within the limitations of the Fourth Amendment.”). In this case, however, the officers did not ask Bernard to submit to a blood test. Therefore, the question of a blood or urine test incident to arrest is not before us, and we express no opinion as to whether a blood or urine test of a suspected drunk driver could be justified as a search incident to arrest. The differences between a blood test and a breath test are material, and not the least of those differences is the less-invasive nature of breath testing. See Skinner v. Ry. Labor Execs. Assn, 489 U.S. 602, 626, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989) (stating that, unlike blood tests, breath tests do not ”implicate[] significant privacy concerns”).

. The State makes no argument in this case that the breath test was necessary to protect the safety of the officers or jailers from an intoxicated arrestee.

. The dissent’s interpretation of Riley makes no logical sense. Even though the Court in Riley reaffirmed Robinson’s holding that "searches of a person” are lawful as part of a search incident to arrest without any additional showing by the government, see Riley, — U.S. at -, 134 S.Ct. at 2485, the dissent asserts that the phrase "searches of a person” actually refers to personal property found on a person. We think that if the Supreme Court intended the phrase "searches of a person” to exclude searching the actual person, i.e., their body, and to only include searching personal property found on a person, the Court would have clearly said so. We are also hard pressed to understand how the police can even search personal property found on a person without first searching the actual person.
The dissent also claims that because the Supreme Court in Riley did not extend its holding from Robinson regarding the type of objects found on a person that may be categorically searched incident to arrest to digital content found within a cell phone, "the only logical conclusion is that the removal of breath (or blood or urine) from the body to discover an arrestee’s blood alcohol level is not part of a search incident to arrest.” We disagree. The search at issue in Riley was not a search of the defendant's body, like the search involved in this case, but a search of a physical object found on the defendant. In addition, the search that occurs when a breath test is taken is clearly distinguishable *771 from the search of the contents of a person’s cell phone. In Riley, the Court emphasized that even with the diminished expectation of privacy that comes with a custodial arrest, a search of a cell phone would be intrusive. Riley, - U.S. at -, 134 S.Ct. at 2485. The Court noted that ”[m]odern cell phones, as a category, implicate privacy concerns far beyond those implicated by the search of a cigarette pack, a wallet, or a purse” because they contain vast quantities of highly personal information about a person. Id. at -, 134 S.Ct. at 2488-89. The same cannot be said for a breathalyzer test, which reveals nothing more than the level of alcohol in the arres-tee’s bloodstream. See Skinner, 489 U.S. at 625, 109 S.Ct. 1402.
Finally, our conclusion that Riley did not limit the full body search of an arrestee authorized by Robinson is reinforced by other language in the opinion. The Court reiterated later in Riley that "we do not overlook Robinson’s admonition that searches of a person incident to arrest, 'while based upon the need to disarm and to discover evidence’ are reasonable regardless of ‘the probability in a particular arrest situation that weapons or evidence would in fact be found.' ” Riley, - U.S. at -, 134 S.Ct. at 2485 (quoting Robinson, 414 U.S. at 235, 94 S.Ct. 467). There would have been no need for the court to reaffirm its holding from Robinson regarding "searches of a person incident to arrest” if Robinson only authorized the search of personal property found on an arrestee. Id. at -, 134 S.Ct. at 2485.

. A group of state attorneys general did argue that the search in McNeely was permissible under the search-incident-to-arrest exception. Brief for Delaware, et al. as Amici Curiae Supporting Petitioner at 7-20, Missouri v. McNeely, - U.S. -, 133 S.Ct. 1552, 185 L.Ed.2d 696 (2013) (No. 11-1425). The U.S. Supreme Court, however, does not consider arguments "not raised by the parties or passed on by the lower courts." F.T.C. v. Phoebe Putney Health Sys., Inc., - U.S. -, 133 S.Ct. 1003, 1010 n. 4, 185 L.Ed.2d 43 (2013).

. Specifically, the Supreme Court recognized that "searches of a person incident to a lawful arrest” are part of. a "limited class of traditional exceptions to the warrant requirement that apply categorically and thus do not require an assessment of whether the policy justifications underlying the exception ... are implicated in a particular case." McNeely, - U.S. at -, 133 S.Ct. at 1559 n. 3. The dissent is therefore mistaken that it "strains credulity to suppose" that the search-incident-to-arrest exception would apply to a future warrantless breath test case because the exception "turns on the same rationale regarding the preservation of evidence that the Supreme Court explicitly rejected in McNeely." The Supreme Court reaffirmed in McNeely that a search of a person incident to arrest is categorically justified not by a specific rationale for the preservation of evidence, but by a lawful arrest.

.The dissent argues that our holding ignores the U.S. Supreme Court’s narrowing of the search-incident-to-arrest exception. The Supreme Court, however, has not been narrowing the search-incident-to-arrest exception as it applies to searches of the arrestee's person. Instead, the Court has been clarifying the exception's application to a search of the area or things within the arrestee’s immediate control. See Riley, - U.S. at -, 134 S.Ct. at 2484-85 (holding that searching the data on a cell phone was not a search incident to arrest, but recognizing a categorical exception justifying searches of an arrestee's person); Gant, 556 U.S. at 339, 129 S.Ct. 1710 (discussing searches incident to arrest in the context of a search of an automobile).
Further, despite narrowing the scope of the exception in terms of searches other than of the defendant’s body, the U.S. Supreme Court has not overruled Robinson, and "only the Supreme Court may overrule one of its own decisions.” State v. Brist, 812 N.W.2d 51, 56 (Minn.2012) (citing Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd., 460 U.S. 533, *773 535, 103 S.Ct. 1343, 75 L.Ed.2d 260 (1983)). The Supreme Court has stated, "If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, [courts] should follow the case which directly controls....” Rodriguez de Quijos v. Shearson/Am. Express, Inc., 490 U.S. 477, 484, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989). Robinson’s discussion of-searches of the person incident to arrest is on point in this case. The Supreme Court has not overruled Robinson, and so we will follow it. Under Robinson, a search of Bernard’s breath incident to his arrest is a permissible search by virtue of his lawful arrest.