*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1438**

State of Minnesota,
Respondent,

vs.

Maceo Valdez Jackson,
Appellant.

**Filed August 24, 2015
Affirmed
Halbrooks, Judge**

Hennepin County District Court
File No. 27-CR-13-15049

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Susan L. Segal, Minneapolis City Attorney, Jennifer Saunders, Assistant City Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Roy G. Spurbeck, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Halbrooks, Presiding Judge; Worke, Judge; and Connolly, Judge.

**U N P U B L I S H E D   O P I N I O N**

**HALBROOKS**, Judge

Appellant challenges his convictions of second-degree test refusal, second-degree driving while impaired (DWI), and driving after revocation, arguing that (1) Minnesota's

test-refusal statute is unconstitutional under *Missouri v. McNeely* and federal and state due-process guarantees; (2) the district court erred by failing to give a specific unanimity instruction on DWI; and (3) the jury instructions on driving-after-revocation constituted plain error.  We affirm.

**FACTS**

Alerted by the sound of squealing tires around 2:00 a.m., a Minnesota Department of Transportation sign crew supervisor looked up and saw a dark green sports utility vehicle roll over on a ramp from I-94 to I-35W/Highway 65 southbound.  The SUV landed upright and after about 30 seconds, continued driving.  The supervisor noted smoke coming out of the hood but lost sight of the SUV as it approached Franklin Avenue.  He reported the crash when it occurred and called again to relay that the SUV was leaving the scene.  A state trooper was dispatched to the area.

Upon arrival, the trooper found a dark green Mercury Mountaineer parked on the right shoulder of the freeway near Franklin Avenue with its hazard lights blinking.  The vehicle had "dents, marks, indentations" and scratches that were "consistent with a vehicle that had been in a crash . . . [and] had possibly rolled."  A man later identified as appellant Maceo Jackson was standing next to the driver's side of the vehicle.  No one was in the driver's seat, but keys were in the ignition, and the car was running.  A woman later identified as Jackson's wife was seated in the front passenger seat, wearing her seatbelt.  Neither Jackson nor his wife was injured.

The trooper spoke with Jackson and detected an overwhelmingly strong odor of alcohol, bloodshot and watery eyes, and slurred and incoherent speech.  The trooper

2

asked a series of questions related to the crash, and Jackson responded that he was coming from a bar in Minneapolis, had had "a couple of beers and a couple of shots," "was going between 55 and 60 miles an hour," and had been side-swiped, which caused the crash. Jackson failed the horizontal nystagmus and walk-and-turn tests, would not attempt the one-legged stand, and refused to blow into the preliminary-breath-test instrument. The trooper placed Jackson under arrest on suspicion of DWI and transported him to the Hennepin County jail.

The trooper read Jackson the Minnesota implied-consent advisory and gave him 30 minutes, a phone, and phone books to contact an attorney. The trooper then asked Jackson 20 times whether he would submit to a breath test. Receiving neither an affirmative nor negative response from Jackson, the trooper deemed his conduct a refusal.

The state charged Jackson with second-degree DWI (test refusal) in violation of Minn. Stat. § 169A.20, subd. 2 (2012); second-degree DWI (under the influence) in violation of Minn. Stat. § 169A.20, subd. 1(1) (2012); and driving after revocation in violation of Minn. Stat. § 171.24, subd. 2 (2012). Jackson moved to dismiss the test-refusal count, arguing that Minnesota's test-refusal statute is unconstitutional. The district court denied the motion, and a jury found Jackson guilty. The district court convicted Jackson of all three counts and sentenced him to 365 days in jail, with 275 days stayed. Jackson now appeals his convictions.

**D E C I S I O N**

**I.**

Jackson challenges his conviction of second-degree refusal to submit to chemical testing under Minn. Stat. § 169A.20, subd. 2. He argues that the district court erred by denying his motion to dismiss because Minnesota's criminalization of test refusal is unconstitutional. But Jackson acknowledges that the Minnesota supreme court held otherwise in *State v. Bernard*, 859 N.W.2d 762 (Minn. 2015), and that this court "is plainly bound by the Minnesota Supreme Court."

Our supreme court held in *Bernard* that "a warrantless breath test does not violate the Fourth Amendment because it falls under the search-incident-to-a-valid-arrest exception." 859 N.W.2d at 766 (reasoning that the exception allows the police "to conduct a full search of the person who has been lawfully arrested" (quotation omitted)). With respect to Jackson's arguments that criminalization of test refusal violates substantive due-process rights under the United States and Minnesota Constitutions, our supreme court stated that there is no fundamental right to refuse a constitutional search. *Id.* at 773.

The supreme court therefore applied rational-basis review to the appellant's due-process challenge, explaining that the test-refusal statute would be upheld if it is not arbitrary or capricious and is a reasonable means to a permissive government objective. *Id.* The supreme court determined that Minnesota has a compelling public-safety interest in keeping impaired drivers off of roadways, that securing chemical tests to determine alcohol concentration is reasonably related to that interest, and that criminalizing test

4

refusal to encourage submission to chemical tests also furthers that interest. *Id.* at 773-74. The supreme court concluded that "the test refusal statute is a reasonable means to a permissive object and that it passes rational basis review" and is therefore constitutional. *Id.* at 774. The *Bernard* decision is dispositive of Jackson's argument that the Minnesota test-refusal statute is unconstitutional. The district court properly denied Jackson's motion to dismiss the test-refusal count.

## II.

Jackson argues that the district court committed reversible error by not giving a specific unanimity instruction with respect to DWI (under the influence).[1] Under this statute, "[i]t is a crime for any person to drive, operate, *or* be in physical control of any motor vehicle . . . when . . . the person is under the influence of alcohol." Minn. Stat. § 169A.20, subd. 1(1) (emphasis added). Jackson argues that because members of the jury could have disagreed on whether he was driving, operating, or in physical control of a vehicle, his right to a unanimous verdict was violated.

Jackson did not request a specific unanimity instruction, but he did object to the standard DWI instructions because "with the second charge where those are three different acts, and so then we're asking the jury to ambiguously deliberate on three different acts, and we won't know if [it's a unanimous verdict]." Jackson proposed omitting language referencing "operating" or being "in physical control of" a vehicle,

---

[1] The district court gave the jury a standard unanimity instruction: "In order for you to return a verdict, whether guilty or not guilty, each juror must agree with that verdict. Your verdict must be unanimous."

5

leaving only "drive" in the instructions. The district court rejected this argument and instructed the jury based on the applicable CRIMJIGs.

A district court has "considerable latitude" in selecting language for jury instructions. *State v. Baird*, 654 N.W.2d 105, 113 (Minn. 2002). Appellate courts "review the jury instructions in their entirety to determine whether the instructions fairly and adequately explain the law of the case." *State v. Milton*, 821 N.W.2d 789, 805 (Minn. 2012) (quotation omitted).

"Jury verdicts in all criminal cases must be unanimous." *State v. Pendleton*, 725 N.W.2d 717, 730 (Minn. 2007) (citing Minn. R. Crim. P. 26.01, subd. 1(5)). But "unanimity is not required with respect to the alternative means or ways in which the crime can be committed." *State v. Begbie*, 415 N.W.2d 103, 106 (Minn. App. 1987) (quotation omitted), *review denied* (Minn. Jan. 20, 1988); *see also Schad v. Arizona*, 501 U.S. 624, 636, 111 S. Ct. 2491, 2499 (1991) (holding that "certain statutory alternatives are mere means of committing a single offense, rather than independent elements of the crime"). Jackson argues that the instructions here allowed the jury to convict him without unanimously agreeing which essential elements were satisfied.

The essential element at issue here is that the defendant drove, operated, *or* had physical control of a vehicle. Based on the plain language of the statute, driving, operating, or having physical control are distinct means of satisfying a single element. As the case was argued at trial, Jackson either drove the car or he did not. The case was not about physical control. But in any event, "[t]he term 'physical control' is more comprehensive than either the term to 'drive' or to 'operate.'" *State v. Fleck*, 777

6

N.W.2d 233, 236 (Minn. 2010). One cannot drive or operate a car without having physical control over it. By finding Jackson guilty, all jurors agreed that Jackson, at a minimum, had physical control of the vehicle.

Here, the jury did not need to select from distinct sets of factual allegations, each with a separate defense. *See, e.g., State v. Stempf*, 627 N.W.2d 352, 354 (Minn. App. 2001) (defendant was charged with one count of drug possession based on alleged acts occurring at two different times and two different locations with two different defenses). Because driving, operating, or having physical control are three means of committing a single offense and not distinct elements, the instructions given fairly and adequately explained the law of the case. The district court did not err by not giving a specific unanimity instruction.

## III.

Jackson argues that the district court erred by instructing the jury that he could be found guilty of driving after revocation under Minn. Stat. § 171.24, subd. 2, if he "drove, operated, or was in physical control of a motor vehicle" while his license was revoked because "physical control" is not a means of violating this statute. Jackson did not object to the jury instruction. Accordingly, our review is for plain error. *See State v. Clark*, 755 N.W.2d 241, 251 (Minn. 2008). Under that standard, an appellant must demonstrate that there is (1) error, (2) that is plain, and (3) the error affected his substantial rights. *State v. Griller,* 583 N.W.2d 736, 740 (Minn. 1998). Plain error requires reversal only if "the fairness, integrity, or public reputation of the judicial proceeding is seriously affected." *State v. Barrientos-Quintana*, 787 N.W.2d 603, 611 (Minn. 2010) (quotation omitted).

7

Minnesota law provides that a person who is on notice that his driver's license has been revoked and who "disobeys the order by operating in this state any motor vehicle, the operation of which requires a driver's license" is guilty of a misdemeanor. Minn. Stat. § 171.24, subd. 2. The district court here instructed the jury that being in physical control of the vehicle would violate the statute. The state concedes that the instruction therefore contained an error that was plain. We agree. We next consider whether the error affected Jackson's substantial rights.

Jackson argues that his substantial rights were affected because the jury could have found that he was in physical control of the vehicle but did not drive or operate it. The state contends that Jackson's substantial rights were not affected and that the error did not have a significant effect on the verdict because as the case was argued at trial, Jackson "was either the driver of that vehicle before and during the accident or it was someone else. This was not a case of physical control." The record supports the state's contention.

No evidence presented at trial would support a finding that Jackson was in physical control of the vehicle but did not drive or operate it. The state contended at trial that Jackson was the driver who had rolled the SUV and attempted to continue driving. Jackson was found standing next to the SUV on the shoulder of a busy freeway. The keys were in the ignition and the vehicle was running. No one was in the driver's seat. The front passenger seat was occupied. No one else was present. Jackson answered a number of questions about the crash and driving conduct as if he had been the driver.

8

And he repeatedly asserted on the side of the freeway not that he had **not** been driving, but that the trooper had not **seen him** driving.

Jackson has the "heavy burden" of showing that "the error was prejudicial and affected the outcome of the case." *Griller*, 583 N.W.2d at 741. Considering the evidence presented and the arguments made at trial, Jackson has not met his heavy burden of showing that the erroneous jury instruction affected his substantial rights.

**Affirmed.**