*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-2148**

State of Minnesota,
Respondent,

vs.

Alexander Nathan Davis,
Appellant.

**Filed October 26, 2015
Affirmed
Smith, Judge**

Hennepin County District Court
File No. 27-CR-13-36312

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Susan L. Segal, Minneapolis City Attorney, David S. Bernstein, Paula J. Kruchowski, Assistant City Attorneys, Minneapolis, Minnesota (for respondent)

Rick E. Mattox, Prior Lake, Minnesota (for appellant)

Considered and decided by Smith, Presiding Judge; Johnson, Judge; and Larkin, Judge.

## UNPUBLISHED OPINION

**SMITH**, Judge

We affirm appellant's convictions for driving while impaired because the record supports the district court's factual findings and conclusion that there was a basis to

expand appellant's initial traffic stop for speeding to investigate whether he was also driving while impaired.

## FACTS

State Trooper Francis Tutell stopped appellant Alexander Davis's car on westbound Highway 62 after Davis's car sped past him at 71 miles per hour, as measured by radar. Trooper Tutell illuminated the car with a spotlight and approached on the passenger side with a flashlight. When he initially looked inside the car, Trooper Tutell "noticed the strong odor of an alcoholic beverage" and that Davis's "eyes were watery and slightly bloodshot." There were several other people in the car, and, according to Trooper Tutell, "It was fairly obvious to me that everyone in the vehicle had been consuming alcohol." Trooper Tutell asked Davis if he had been drinking, and Davis said that he had consumed two beers hours earlier.

Trooper Tutell then asked Davis to get out of the car, where Trooper Tutell observed further signs of Davis's intoxication and eventually arrested him on suspicion of driving while impaired (DWI). After the implied-consent advisory was read to him, Davis spoke by telephone with his father, who is an attorney, for one minute. Davis then agreed to take a breath test which showed an alcohol concentration of .13. He was charged with two counts of fourth-degree DWI.

Following a hearing, the district court denied Davis's pretrial motion to suppress the evidence from the stop and made findings consistent with Trooper Tutell's testimony. The district court found:

> Trooper Tutell's testimony was credible [regarding] the lighting conditions within the passenger compartment of the vehicle, which is borne out and corroborated by the videotape. And from that he was able to tell in talking with the defendant that the defendant's eyes were bloodshot and watery. He noticed a strong odor of alcohol coming from the vehicle.

The district court further found that Davis admitted he drank a couple of beers, failed the field sobriety tests, was read the implied-consent advisory, and that Trooper Tutell did not coerce him to take a breath test. The district court also found that Davis's right to counsel was vindicated.

A jury found Davis guilty of two counts of fourth-degree DWI, and the district court sentenced him on one count.

**D E C I S I O N**

Davis claims that the district court made erroneous findings to support expansion of the initial traffic stop to investigate him for DWI. Police may execute a traffic stop of a vehicle if they have reasonable suspicion of criminal activity. *State v. Munson*, 594 N.W.2d 128, 136 (Minn. 1999); *see Terry v. Ohio*, 392 U.S. 1, 21-22, 88 S. Ct. 1868, 1880-81 (1968). Police may expand the scope of a stop without violating the Fourth Amendment if the additional intrusion is "tied to and justified by one of the following: (1) the original legitimate purpose of the stop, (2) independent probable cause, or (3) reasonableness, as defined in *Terry*." *State v. Askerooth*, 681 N.W.2d 353, 365 (Minn. 2004); *see Terry*, 392 U.S. at 21, 88 S. Ct. at 1880 (stating that a "police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion"). An appellate court

reviews de novo a district court's legal determination that police had reasonable suspicion to conduct an investigatory stop, and reviews the district court's factual findings for clear error. *State v. Britton*, 604 N.W.2d 84, 87 (Minn. 2000).

We examine each of Trooper Tutell's three reasons for expansion of the traffic stop. First, the district court relied on the odor of alcohol emanating from appellant's vehicle. Both parties cite *State v. Lopez*, 631 N.W.2d 810, 814 (Minn. App. 2001), *review denied* (Minn. Sept. 25, 2001), in which this court upheld the expansion of a traffic stop after a police officer smelled the odor of alcohol coming from the car, stating, "Because the odor of alcohol provided [the arresting officer] with reasonable suspicion of criminal activity, i.e., an open bottle in the car, she had a lawful basis to continue the detention and conduct an investigation." Trooper Tutell also noted that it was "obvious" that everyone in the car had been drinking, which added to his suspicions derived from the odor of alcohol coming from the car. *Lopez* supports the district court's decision that there was a valid reason to expand the stop.

Next, the district court relied on Trooper Tutell's testimony that Davis's eyes were bloodshot and watery. Bloodshot, watery eyes also demonstrate indicia of intoxication. *See State v. Klamar*, 823 N.W.2d 687, 696 (Minn. App. 2012) (upholding expansion of stop when driver had odor of alcohol and bloodshot and watery eyes). Davis claims that Trooper Tutell's testimony about the condition of his eyes is not credible because Tutell had inadequate time or contact with him to observe his eyes. It is exclusively the factfinder's duty to weigh witness credibility, and we defer to that credibility determination. *State v. Pieschke*, 295 N.W.2d 580, 584 (Minn. 1980). Further, we have

4

reviewed a digital recording of the stop which shows that Davis's car was brightly illuminated by Trooper Tutell's spotlight and that he had the opportunity to observe Davis's eyes over the course of several minutes of conversation with him.

Third, Davis does not challenge the district court's finding that he admitted to Trooper Tutell that he had consumed alcohol.

Collectively, the district court's findings on Davis's indicia of intoxication are supported by the record, are not clearly erroneous, and provide a reasonable suspicion of criminal activity to support expansion of the stop of Davis's car to further investigate whether he was driving under the influence.

Davis also argues that his right to counsel was not vindicated because he was given insufficient time to consult with counsel. Davis asserts that his father "acted like a disappointed father and not like a lawyer" by having only a one-minute call with his son.

> Drivers have a constitutional right upon request, to a reasonable opportunity to obtain legal advice before deciding whether to submit to chemical testing. The right to counsel is limited in DWI cases to ensure that consultation does not unreasonably delay the administration of the test. The right to counsel is considered vindicated when the driver is provided with a telephone prior to testing and given a reasonable amount of time to contact and consult with an attorney.

*Mell v. Comm'r of Pub. Safety*, 757 N.W.2d 702, 712 (Minn. App. 2008) (quotation and citations omitted); *see Butler v. Comm'r of Pub. Safety*, 348 N.W.2d 827, 829 (Minn. App. 1984) (stating that the officer is required only to "facilitate the defendant's right to counsel, not . . . [to] make sure the defendant has received the best or even proper counsel"). "A reasonable time is not a fixed amount of time, and it cannot be based on

5

elapsed minutes alone." *Mell*, 757 N.W.2d at 713. A "court must balance the efforts made by the driver against the efforts made by the officer." *Id.*

Trooper Tutell made a telephone available to Davis, and there is no evidence that he attempted to limit the duration of Davis's conversation with his father. After the short conversation, Davis did not ask to make further calls. The brevity of the call alone does not mandate a conclusion that Davis was denied his right to counsel—it is just as likely that the attorney may have given his son quick but well-informed advice—to take the test. *See State v. Bernard*, 859 N.W.2d 762, 773 (Minn. 2015) (noting that the implied-consent law "encourag[es] drivers to submit to" chemical testing). We agree with the district court's determination that Davis's right to counsel was vindicated.

Davis makes several other arguments that require this court to decline to follow two seminal opinions recently issued by the Minnesota Supreme Court. In *Bernard*, the supreme court upheld the warrantless search of a driver as a search incident to arrest, applied rational basis review to the driver's as-applied due process claim regarding the test-refusal statute, and ruled that the test-refusal statute, as applied, did not violate the driver's due process rights. *Id.* at 762. In *State v. Brooks*, the supreme court applied a totality-of-circumstances test to conclude that even when another exigency does not exist, a warrantless search of the driver will be upheld if the driver voluntarily consented to the search after being read the implied-consent advisory. 838 N.W.2d 563 (Minn. 2013), *cert. denied*, 134 S. Ct. 1799 (2014).

"The general rule . . . is that an appellate court must apply the law in effect at the time it renders its decision." *Thorpe v. Housing Authority of Durham*, 393 U.S. 268, 281,

6

89 S. Ct. 518, 526 (1969).  Until the holdings of *Bernard* and *Brooks* are altered upon further review, this court must apply them.  *See State v. Hicks*, 864 N.W.2d 153, 169 (Minn. 2015) ("The doctrine of stare decisis directs us to adhere to our former decisions in order to promote the stability of the law and the integrity of the judicial process." (quotation omitted)).  We therefore decline to address Davis's other arguments.

**Affirmed**.

7