*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-2050**

James David Clark, petitioner,
Appellant,

vs.

Commissioner of Public Safety,
Respondent.

**Filed July 18, 2016
Affirmed
Smith, Tracy M., Judge**

Norman County District Court
File No. 54-CV-15-182

Rich Kenly, Backus, Minnesota (for appellant)

Lori Swanson, Attorney General, Amy Tripp-Steiner, Assistant Attorney General,
St. Paul, Minnesota (for respondent)

Considered and decided by Smith, Tracy M., Presiding Judge; Worke, Judge; and

Reilly, Judge.

## UNPUBLISHED OPINION

**SMITH, TRACY M.**, Judge

Appellant James David Clark challenges the district court's order sustaining the

revocation of his driver's license, arguing that Minnesota's implied-consent law is

unconstitutional and that the traffic stop at issue was not supported by reasonable

articulable suspicion. Because the implied-consent law is constitutional and the traffic stop was lawful, we affirm.

**FACTS**

On June 6, 2015, Twin Valley Police Chief Jason Douville was parked at an intersection around 9:00 p.m. He saw a vehicle turn onto a road across from him and "accelerate[] at a rapid pace." Chief Douville activated his radar, which showed that the vehicle was traveling 45 miles per hour in a 30-mile-per-hour zone. Chief Douville then followed the vehicle, which "got up to 50 miles an hour." Chief Douville activated his lights, but the vehicle did not stop. After a quarter or half mile, the vehicle pulled into a driveway. Chief Douville pulled his squad car in the driveway behind the vehicle.

The driver, later identified as Clark, exited the vehicle and started to walk towards the house. Chief Douville escorted Clark back to the squad car. When Chief Douville asked Clark if he had been drinking, Clark indicated that he had consumed two beers. Chief Douville noticed that Clark "had bloodshot, watery eyes and he was swaying back and forth." Chief Douville initially testified that he smelled alcohol in Clark's vehicle. But after refreshing his recollection by looking at his report, Chief Douville testified that he could "smell a strong odor of alcoholic beverage coming from [Clark]." Clark failed a field sobriety test, and a preliminary breath test showed an alcohol concentration of 0.27.

Chief Douville arrested Clark and transported him to jail. At the jail, Chief Douville read Clark the implied-consent advisory. Clark attempted to contact his attorney but was unsuccessful. He was asked to submit to a breath test and refused six times. Chief Douville issued a notice of revocation of Clark's driver's license.

Clark petitioned for rescission of the license revocation. The parties stipulated that the only issues were (1) whether Chief Douville had reasonable articulable suspicion to stop Clark's vehicle; (2) whether Chief Douville had probable cause to arrest Clark; and (3) whether the implied-consent law is constitutional. The district court concluded that Chief Douville had reasonable suspicion to stop Clark's vehicle due to Clark's speeding and had probable cause to arrest Clark for driving under the influence. The district court also concluded that Clark's arguments regarding the constitutionality of the implied-consent law failed under existing caselaw. The district court sustained the revocation of Clark's driver's license.

Clark appeals.

## DECISION

### I.

Clark first challenges the constitutionality of Minnesota's implied-consent law. "The constitutionality of a statute is a question of law that we review de novo." *State v. Ness*, 834 N.W.2d 177, 181 (Minn. 2013) (quotation omitted). "Minnesota statutes are presumed constitutional," and a reviewing court will declare a statute unconstitutional "only when absolutely necessary." *State v. Melde*, 725 N.W.2d 99, 102 (Minn. 2006) (quotation omitted). "The party challenging the constitutionality of a statute bears the very heavy burden of demonstrating beyond a reasonable doubt that the statute is unconstitutional." *State v. Johnson*, 813 N.W.2d 1, 11 (Minn. 2012) (quotation omitted).

Minnesota's implied-consent law allows an officer to request a breath test if the officer "has probable cause to believe the person was driving, operating, or in physical

3

control of a motor vehicle" while impaired. Minn. Stat. § 169A.51, subd. 1(b) (2014). A driver's refusal to submit to a breath test results in the revocation of the driver's license. Minn. Stat. § 169A.52, subd. 3(a) (2014).

Clark argues that the implied-consent law violates his due-process rights because a breath test is a search that requires a warrant and he had a constitutional right to refuse a warrantless breath test. But the supreme court effectively rejected this argument in *State v. Bernard*, 859 N.W.2d 762 (Minn. 2015) (upholding test-refusal statute), *aff'd sub nom. Birchfield v. North Dakota*, No. 14-1468, 2016 WL 3434398 (U.S. June 23, 2016). In *Bernard*, the supreme court analyzed whether Minnesota's test-refusal statute violates due-process rights by "criminalizing [the] refusal to consent to an unconstitutional search." 859 N.W.2d at 764. The supreme court held that a warrantless breath test "would have been constitutional under the search-incident-to-arrest exception to the Fourth Amendment's warrant requirement." *Id.* at 772. Because a warrantless breath test would have been constitutional, the supreme court analyzed the appellant's substantive-due-process argument under rational-basis review and determined that the test-refusal statute "passes rational basis review." *Id.* at 773-74. While Clark's appeal was pending, the United States Supreme Court affirmed *Bernard*, holding that a breath test is a permissible search incident to arrest and does not require a warrant. *Birchfield*, 2016 WL 3434398, at *25. A test of Clark's breath therefore did not require a warrant, and Clark had no constitutional right to refuse a test. *See Bernard*, 859 N.W.2d at 772-74.

Clark also cites to the unconstitutional-conditions doctrine in the conclusion of his brief. To the extent Clark argues that the implied-consent law violates the

unconstitutional-conditions doctrine, this court has previously rejected that argument in *Stevens v. Comm'r of Pub. Safety*. *See* 850 N.W.2d 717, 731 (Minn. App. 2014) ("[W]e conclude that Minnesota's implied-consent statute does not violate the unconstitutional-conditions doctrine by authorizing the commissioner of public safety to revoke the driver's license of a person who has been arrested for DWI and has refused to submit to chemical testing.").

Because Clark's arguments regarding the constitutionality of the implied-consent law fail, the district court did not err by denying Clark's petition to rescind the revocation of his driver's license.

**II.**

Clark also challenges the legality of the traffic stop. When reviewing the legality of a search or seizure, the reviewing court will not reverse the district court's findings of fact unless they are clearly erroneous. *In re Welfare of G.M.*, 560 N.W.2d 687, 690 (Minn. 1997). We review reasonable-suspicion determinations de novo. *Id.*

The United States and Minnesota Constitutions prohibit unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. I, § 10. A seizure occurs when a police officer temporarily detains an individual during a traffic stop. *State v. Thiel*, 846 N.W.2d 605, 610 (Minn. App. 2014), *review denied* (Minn. Aug. 5, 2014). But "[l]imited investigatory stops are allowed if police have reasonable articulable suspicion of a motor vehicle violation or of criminal activity." *State v. Johnson*, 645 N.W.2d 505, 508 (Minn. App. 2002). To justify an investigatory traffic stop, "the police must only show that the stop was not the product of mere whim, caprice or idle curiosity, but was based upon

5

specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *State v. Anderson*, 683 N.W.2d 818, 823 (Minn. 2004) (quotations omitted).

"[I]f an officer observes a violation of a traffic law, however insignificant, the officer has an objective basis for stopping the vehicle." *State v. George*, 557 N.W.2d 575, 578 (Minn. 1997). Driving in excess of the speed limit is a traffic-law violation. Minn. Stat. § 169.14, subd. 2 (2014). The district court concluded that Chief Douville's reasonable suspicion that Clark was speeding justified the traffic stop. The record supports this conclusion. Chief Douville's radar showed that Clark was driving 45 to 50 miles per hour in a 30-mile-per-hour zone. And Chief Douville testified that he initiated the traffic stop based on Clark's speeding. Because Chief Douville observed Clark's speeding—a traffic-law violation—the district court did not err in finding a reasonable articulable suspicion of criminal activity sufficient to justify the traffic stop.

But Clark argues that Chief Douville lacked a reasonable articulable suspicion sufficient to justify the traffic stop because he did not suspect Clark of driving under the influence of alcohol until after initiating the stop. This argument misconstrues existing caselaw regarding traffic stops. Chief Douville only needed a reasonable articulable suspicion of criminal activity, *see Johnson*, 645 N.W.2d at 508, not a reasonable articulable suspicion of alcohol impairment. Clark is correct that a seizure occurred when Chief Douville stopped his squad car behind Clark's vehicle and blocked it in. *See Thiel*, 846 N.W.2d at 610 ("The temporary detention of an individual during a traffic stop is a seizure."); *Klotz v. Comm'r of Pub. Safety*, 437 N.W.2d 663, 665 (Minn. App. 1989)

6

(stating that a seizure occurs when an officer blocks an individual's vehicle), *review denied* (Minn. May 24, 1989). But the seizure was properly based on a reasonable articulable suspicion of Clark's speeding.

The scope of a traffic stop may be expanded to investigate "other suspected illegal activity" if the officer gains a reasonable articulable suspicion regarding such other activity. *State v. Wiegand*, 645 N.W.2d 125, 135 (Minn. 2002). Here, Chief Douville gained a reasonable articulable suspicion of another criminal activity—driving while impaired—when he noticed Clark's bloodshot, watery eyes, smelled alcohol on Clark, and learned from Clark that Clark had consumed two beers. Chief Douville was therefore justified in expanding the scope of the traffic stop to investigate Clark's suspected impairment.[1]

**Affirmed.**

---

[1] Clark does not challenge the district court's additional conclusion that Chief Douville had probable cause to arrest Clark for driving under the influence.