# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A14-1813

State of Minnesota,
Respondent,

vs.

David Ray Bennett,
Appellant.

**Filed July 27, 2015**
**Affirmed**
**Johnson, Judge**
**Concurring specially, Cleary, Chief Judge**

Ramsey County District Court
File No. 62SU-CR-13-3597

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Thomas R. Hughes, Hughes & Costello, St. Paul, Minnesota (for respondent)

Charles A. Ramsay, Daniel J. Koewler, Suzula R. Bidon, Ramsay Law Firm, P.L.L.C., Roseville, Minnesota (for appellant)

Considered and decided by Ross, Presiding Judge; Cleary, Chief Judge; and Johnson, Judge.

## S Y L L A B U S

Minnesota's test-refusal statute does not violate the unconstitutional-conditions doctrine by imposing a criminal penalty on a person who has been arrested for driving while impaired and has refused to submit to a breath test.

## O P I N I O N

**JOHNSON**, Judge

David Ray Bennett was arrested on suspicion of driving while impaired and refused to submit to a breath test. After a stipulated-evidence court trial, the district court found Bennett guilty of third-degree refusal to submit to chemical testing, in violation of Minnesota Statutes section 169A.20, subdivision 2. On appeal, Bennett argues that the statute that criminalizes test-refusal violates the unconstitutional-conditions doctrine. We affirm.

## FACTS

During the afternoon of September 5, 2013, Bennett was involved in a two-vehicle collision when he rear-ended another vehicle in stop-and-go traffic on interstate highway 35W in the city of New Brighton. When State Trooper Zachary Hill arrived at the scene, he found Bennett lying across the front seat of his vehicle "in a hyper relaxed state." Bennett had difficulty finding his driver's license, his speech was heavily slurred, he had bloodshot and watery eyes, he smelled of alcohol, and he had difficulty standing. Trooper Hill administered some road-side field sobriety tests while Bennett was seated, and Bennett failed those tests. Trooper Hill believed that it would be unsafe to administer field sobriety tests that would require Bennett to stand because of his unsteadiness. A preliminary breath test indicated that Bennett's alcohol concentration was .152. Trooper Hill arrested Bennett, transported him to the Ramsey County jail, read him the implied-consent advisory, and requested that he take a breath test. Bennett refused.

The state charged Bennett with one count of third-degree refusal to submit to chemical testing, in violation of Minn. Stat. § 169A.20, subd. 2 (2012), and one count of fourth-degree driving while impaired (DWI), in violation of Minn. Stat. § 169A.20, subd. 1(1) (2012). In November 2013, Bennett moved to suppress evidence and to dismiss the charge of refusal to submit to chemical testing. In support of his motion to dismiss, Bennett argued that the test-refusal statute is unconstitutional. In July 2014, the district court issued an 18-page order in which it denied Bennett's motion to dismiss.

In September 2014, the parties agreed to a stipulated-evidence court trial. *See* Minn. R. Crim. P. 26.01, subd. 4. The district court found Bennett guilty of third-degree test refusal and dismissed the charge of fourth-degree DWI. The district court imposed a sentence of 91 days in the workhouse but stayed execution of the sentence, placed Bennett on probation for two years, and ordered a $300 fine. Bennett appeals.

## ISSUE

Does Minnesota's test-refusal statute violate the unconstitutional-conditions doctrine by imposing a criminal penalty on a person who has been arrested for DWI and has refused to submit to a breath test?

## ANALYSIS

Bennett argues that the district court erred by denying his motion to dismiss the charge of refusal to submit to chemical testing. More specifically, Bennett argues that the test-refusal statute is unconstitutional because it violates the unconstitutional-conditions doctrine.

3

The constitutionality of a statute is a question of law, to which this court applies a *de novo* standard of review. *State v. Ness*, 834 N.W.2d 177, 181 (Minn. 2013). We presume that Minnesota statutes are constitutional and will declare a statute unconstitutional "with extreme caution and only when absolutely necessary." *Id.* at 182 (quotation omitted). The party challenging a statute on constitutional grounds must meet "the very heavy burden of demonstrating beyond a reasonable doubt that the statute is unconstitutional." *State v. Johnson*, 813 N.W.2d 1, 11 (Minn. 2012) (quotation omitted).

In Minnesota, any person "who drives, operates, or is in physical control of a motor vehicle within this state or on any boundary water of this state consents . . . to a chemical test of that person's blood, breath, or urine for the purpose of determining the presence of alcohol." Minn. Stat. § 169A.51, subd. 1(a) (2012). A law-enforcement officer may impose this duty on a person if the officer has probable cause to believe that the person has committed the offense of DWI and the person has been arrested for DWI. Minn. Stat. § 169A.51, subd. 1(b). If a person refuses to submit to chemical testing, however, "a test must not be given." Minn. Stat. § 169A.52, subd. 1 (2012); *see also State v. Brooks*, 838 N.W.2d 563, 571 (Minn. 2013) ("If a driver refuses the test, the police are required to honor that refusal and not perform the test."), *cert. denied*, 134 S. Ct. 1799 (2014). But there are consequences for such a refusal. One consequence is that the commissioner of public safety will temporarily revoke the person's driver's license. Minn. Stat. § 169A.52, subd. 3. Another consequence is that the state may charge the person with the criminal offense of refusal to submit to chemical testing. Minn. Stat. § 169A.20, subd. 2.

Bennett contends that the statute criminalizing a person's refusal to submit to chemical testing is unconstitutional because it compels a person to relinquish Fourth Amendment rights as a condition of maintaining a driver's license and avoiding criminal punishment. Bennett relies on the legal theory known as the unconstitutional-conditions doctrine. "The unconstitutional-conditions doctrine is a creature of federal law that may, in some situations, be invoked to protect or vindicate a constitutional right." *Stevens v. Commissioner of Pub. Safety*, 850 N.W.2d 717, 723 (Minn. App. 2014).

In *State v. Netland*, the supreme court considered an argument that was essentially the same as Bennett's argument. 762 N.W.2d 202 (Minn. 2009), *abrogated in part by Missouri v. McNeely*, 133 S. Ct. 1552 (2013), *as recognized in Brooks*, 838 N.W.2d at 567. The appellant in *Netland* invoked the unconstitutional-conditions doctrine as a means of challenging the constitutionality of the statute that criminalizes test refusal. *Id.* at 210-11. The supreme court began its analysis by summarizing the United States Supreme Court caselaw on the unconstitutional-conditions doctrine. *Id.* at 211-12. The supreme court noted that the doctrine might not apply to rights other than those protected by the First Amendment to the United States Constitution. *Id.* at 211; *see also Stevens*, 850 N.W.2d at 724 (noting that Supreme Court has declined to apply unconstitutional-conditions doctrine to Fourth Amendment rights). The supreme court observed that the unconstitutional-conditions doctrine "is properly raised only when a party has successfully pleaded the merits of the underlying unconstitutional government infringement." *Netland*, 762 N.W.2d at 211. Accordingly, the supreme court recognized that, "in order to proceed with her claim, Netland must establish that the criminal test-

5

refusal statute authorizes an unconstitutional search." *Id.* at 212. The supreme court resolved Netland's challenge by reasoning that the "'rapid, natural dissipation of alcohol in the blood'" is sufficient to satisfy the "'single-factor exigent circumstances'" exception to the Fourth Amendment's warrant requirement. *Id.* (quoting *State v. Shriner*, 751 N.W.2d 538, 549-50 (Minn. 2008)). The supreme court's reliance on *Shriner* provided a basis for concluding that a warrantless search of Netland's breath would not have been an unconstitutional search, which meant that imposing a criminal penalty for her refusal to submit to a breath test would not violate the unconstitutional-conditions doctrine, if the doctrine were to apply. *See id.* at 214.

Bennett contends that the supreme court's opinion in *Netland* no longer is good law because *Shriner* was overruled by the United States Supreme Court in *McNeely*. Bennett is correct insofar as the Supreme Court in *McNeely* held that the natural dissipation of alcohol from a person's bloodstream is not a *per se* exigency justifying a warrantless blood test. *See McNeely*, 133 S. Ct. at 1560-63. Rather, the exigency analysis is a fact-specific analysis that must consider the totality of the circumstances, including, among other things, the natural dissipation of alcohol from a person's bloodstream. *Id.* at 1558-60. The Supreme Court in *McNeely* cited *Shriner* as a case that had recognized the natural dissipation of alcohol from a person's bloodstream as a *per se* exigency justifying a warrantless blood test. *Id.* at 1558 n.2. Because *Shriner* is inconsistent with *McNeely*, *Netland* also is inconsistent with *McNeely*, to the extent that *Netland* depends on *Shriner*.

Even if a warrantless search cannot be justified by *Shriner*, the search may be justified by another exception to the warrant requirement. In its responsive brief, the state contends that a warrantless search of a person's breath now is justified by the exception for a search incident to arrest. The state cites *State v. Bernard*, 859 N.W.2d 762 (Minn. 2015),[1] in which the supreme court recently held that the search-incident-to-arrest exception would have justified the warrantless administration of a breath test following a valid arrest for DWI. *Id.* at 767. Even though the appellant in *Bernard* challenged the constitutionality of the criminal test-refusal statute with a different legal theory (substantive due process), the holding in *Bernard* nonetheless is relevant to the unconstitutional-conditions doctrine because that doctrine requires this court to determine whether the search that Bennett refused, a breath test, would have been an unconstitutional search. *See Netland*, 762 N.W.2d at 212. That is essentially the same question that was presented in *Bernard,* in which the supreme court considered "whether a warrantless search of Bernard's breath would have been constitutional under the Fourth Amendment." 859 N.W.2d at 766. In short, the *Bernard* holding may be inserted into the *Netland* analysis in lieu of the *Shriner* holding.

---

[1]At oral argument, Bennett's attorney argued that the state failed to preserve its *Bernard*-based argument by not presenting it to the district court. But it is well-established that the respondent on appeal in a criminal case may present to this court an alternative reason for affirming the district court, if the alternative reason is permitted by both the law and the factual record and would not expand the relief granted. *See* Minn. R. Crim. P. 29.04, subd. 6; *State v. Grunig*, 660 N.W.2d 134, 137 (Minn. 2003) (applying Minn. R. Crim. P. 29.04, subd. 6, to state's alternative ground for affirmance). In this case, the prerequisites of the *Grunig* principle are satisfied.

7

In light of *Bernard*, Bennett's unconstitutional-conditions-doctrine argument is easily resolved. The warrantless breath test that Bennett refused would *not* have been an unconstitutional search because it would have been a valid search incident to a lawful arrest. *See Bernard*, 859 N.W.2d at 767; *Netland*, 762 N.W.2d at 212. Because Bennett cannot "establish that the criminal test-refusal statute authorizes an unconstitutional search," he cannot "proceed with [his] claim" that the criminal-refusal statute violates the unconstitutional-conditions doctrine. *See Netland*, 762 N.W.2d at 212. Therefore, Bennett's constitutional challenge fails.

## D E C I S I O N

The district court did not err by denying Bennett's motion to dismiss the charge of refusal to submit to chemical testing.

**Affirmed.**

**CLEARY**, Chief Judge (concurring specially)

While I agree with the majority as to the result in this case, I concur specially to emphasize the limited purview of this decision. Specifically, I believe that the search-incident-to-arrest exception found in *State v. Bernard*, 859 N.W.2d 762 (Minn. 2015) is limited to providing that a warrantless *breath* test is constitutional under these facts. The *Bernard* court noted that other courts have refused to apply the search-incident-to-arrest exception to warrantless *blood* tests and that the supreme court itself had previously "determined that a warrantless blood sample search was unconstitutional" in a non-DWI context. *Bernard*, 859 N.W.2d at 768 n.6. Putting aside my continuing concerns regarding the taking of a breath sample from an individual's body as part of a search incident to arrest, *see id.* at 774 (Page and Stras, JJ., dissenting jointly) ("[T]he Supreme Court has never implied, much less stated, that the search-incident-to-arrest exception extends to the forcible removal of substances from within a person's body."), even the majority in *Bernard* drew a line by expressing "no opinion as to whether a blood or urine test of a suspected drunk driver could be justified as a search incident to arrest." *Id.*

Consequently, in a blood or urine test-refusal case, the majority could not simply insert the *Bernard* holding "into the *Netland* analysis in lieu of the *Shriner* holding," to determine whether there is an underlying unconstitutional government infringement for the purpose of deciding whether the test-refusal statute imposes unconstitutional conditions on a person's exercise of Fourth Amendment rights. Because the test-refusal statute penalizes the refusal of all types of chemical alcohol concentration testing, and because no Minnesota precedent holds that warrantless blood and urine tests are justified

CS-1

under the search-incident-to-arrest exception, I write separately to posit that the test-refusal statute may well violate the unconstitutional-conditions doctrine as it pertains to warrantless blood and urine tests.