*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0166**

Michael John Frank, petitioner,
Appellant,

vs.

Commissioner of Public Safety,
Respondent.

**Filed July 25, 2016
Affirmed
Cleary, Chief Judge**

Crow Wing County District Court
File No. 18-CV-15-3357

Jeffrey S. Sheridan, Sheridan & Dulas, P.A., Eagan, Minnesota (for appellant)

Lori Swanson, Attorney General, Kristi Nielsen, Peter D. Magnuson, Assistant Attorneys General, St. Paul, Minnesota (for respondent)

Considered and decided by Cleary, Chief Judge; Connolly, Judge; and Toussaint, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**UNPUBLISHED OPINION**

**CLEARY**, Chief Judge

On appeal from an order sustaining the revocation of his driver's license, appellant argues that the district court erred by (1) refusing to suppress evidence obtained after the stop of appellant's car because the police officer lacked a particularized, objective basis for suspecting appellant of criminal activity; (2) admitting evidence obtained from field sobriety tests because it was obtained from appellant in violation of his Fourth Amendment rights; (3) admitting evidence from a DataMaster breath test because it was obtained in violation of appellant's Fourth Amendment rights; and (4) admitting the breath test result because the criminal test-refusal statute is unconstitutional, and therefore the implied consent advisory read to appellant violated his constitutional right to due process of law and the doctrine of unconstitutional conditions. We affirm.

## FACTS

At about 12:35 a.m. on Sunday, August 2, 2015, a police officer was on patrol, driving on a county road near Breezy Point. As the officer approached a hillcrest, he saw appellant's vehicle, a pickup truck, traveling in the opposite direction. As appellant's truck crested the hill, appellant flashed his bright headlights very briefly. The officer testified that he was about 150 to 200 feet from appellant's vehicle when its headlights went from dim to bright and then dimmed again. The officer stated that as he approached the hill, he was driving at about 50 miles per hour, and he estimated that appellant's vehicle was

traveling at about 55 miles per hour. On cross-examination, the officer agreed that the vehicles were converging at about 95 to 110 miles per hour.

The officer also testified that appellant's headlights were "extremely bright," to the extent that they "literally just about blinded [him]." The officer testified that he pulled onto the shoulder and stopped because he was blinded by appellant's headlights. Appellant continued driving east. The district court found that the officer believed appellant had violated Minn. Stat. § 169.61(b) (2014) (prohibiting drivers from aiming glaring headlights into the eyes of oncoming drivers), so the officer made a U-turn from the shoulder to follow appellant's vehicle and make further observations about its operation. The officer testified that he intended to pull appellant over for flashing his bright headlights.

The officer caught up with appellant as he was entering a series of curves in the road. The officer observed appellant's vehicle cross the centerline on one curve, and then cross the fog line on the next curve. The officer then stopped appellant's vehicle. He testified that he initiated the stop due to the time of day, the fact that it was a weekend night, the fact that appellant had flashed his bright headlights, and appellant's inability to maintain lane position.

After stopping the truck, the officer approached the vehicle and told appellant that the reason for the stop was the way in which appellant had flashed his bright lights. As the officer was speaking with appellant, he noted that there was a strong odor of alcohol coming from inside the vehicle, that appellant's eyes were bloodshot and watery, and that his speech was somewhat slurred. When asked if he had been drinking, appellant

3

responded that he had consumed two alcoholic drinks. The officer directed appellant to get out of his vehicle and instructed him to perform three different field sobriety tests. Appellant displayed signs of impairment during each test. The officer then administered a Preliminary Breath Test (PBT), which registered a blood alcohol content of 0.15. The officer arrested appellant for driving while impaired (DWI) and transported him to the Crow Wing County Jail.

At the jail, the officer read the Implied Consent Advisory to appellant, asked appellant if he understood, and asked appellant if he wished to call an attorney. Appellant answered "yes" to both questions. Appellant placed several phone calls during a period of about 26 minutes, apparently without success. The district court found that appellant indicated that he was finished using the phone when he said, "I don't know if I can reach an attorney at this hour." The officer asked appellant if he would take a breath test, and appellant asked what would happen if he refused. In response, the officer read the portion of the advisory that explains that Minnesota law requires appellant to take a test and that it is a crime to refuse to take the test. The officer then asked appellant again if he would take the breath test, and appellant agreed to take it, responding, "I suppose, yeah, I guess."

A test operator then administered a DataMaster breath test, which indicated that appellant's blood alcohol concentration was 0.15. The officer certified that there was probable cause to believe that appellant had violated Minn. Stat. § 169A.20 (driving while impaired), and respondent Commissioner of Public Safety subsequently revoked appellant's driver's license. Appellant petitioned the district court to rescind the

4

revocation. After an implied-consent hearing, the district court sustained the revocation, concluding that the stop, seizure, and arrest were lawful and that appellant voluntarily consented to the breath test. This appeal followed.

## D E C I S I O N

### I. Basis for investigatory stop

Appellant argues that the district court erred when it refused to suppress evidence obtained from the unlawful stop of appellant's vehicle. Appellant contends that the district court clearly erred in finding the officer's testimony credible.

The United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV; *see also* Minn. Const. art. I, § 10 (guaranteeing the same). Warrantless searches are per se unreasonable, subject to a few exceptions. *State v. Othoudt*, 482 N.W.2d 218, 222 (Minn. 1992). A police officer may conduct a limited investigatory stop of a motor vehicle if the officer has a "particularized and objective basis for suspecting the particular person stopped of criminal activity." *State v. Anderson*, 683 N.W.2d 818, 822-23 (Minn. 2004) (quotation omitted). A reasonable, articulable suspicion exists if, "in justifying the particular intrusion the police officer [is] able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880 (1968).

The reasonable-suspicion standard is not high, but the suspicion must be "something more than an unarticulated hunch," *State v. Davis*, 732 N.W.2d 173, 182 (Minn. 2007)

5

(quotation omitted), and more than an "inchoate and unparticularized suspicion," *State v. Timberlake*, 744 N.W.2d 390, 393 (Minn. 2008) (quotation omitted). Even a minor violation of traffic law can establish a particularized, objective basis for an investigatory stop. *State v. George*, 557 N.W.2d 575, 578 (Minn. 1997).

"We review a district court's determination regarding the legality of an investigatory traffic stop and questions of reasonable suspicion de novo." *Wilkes v. Comm'r of Pub. Safety*, 777 N.W.2d 239, 242-43 (Minn. App. 2010). Findings of fact are reviewed for clear error. *State v. Britton*, 604 N.W.2d 84, 87 (Minn. 2000). A finding of fact is clearly erroneous only when the court is left with the "definite and firm conviction that a mistake has been committed." *Jasper v. Comm'r of Pub. Safety*, 642 N.W.2d 435, 440 (Minn. 2002) (quotation omitted). "Due regard is given the district court's opportunity to judge the credibility of witnesses." *Snyder v. Comm'r of Pub. Safety*, 744 N.W.2d 19, 22 (Minn. App. 2008).

The district court found that the police officer "clearly and credibly testified that [appellant's] high beam lights did temporarily blind and impair his sight." On this basis, the district court found that the police officer reasonably concluded that appellant had violated Minn. Stat. § 169.61(b) (2014), and that this violation provided justification for the investigatory stop. Minn. Stat. § 169.61(b) provides that "[w]hen the driver of a vehicle approaches a vehicle within 1,000 feet, such driver shall use a distribution of light, or composite beam, so aimed that the glaring rays are not projected into the eyes of the oncoming driver." *Id.* But the statute "does not prohibit drivers from momentarily flashing

6

their high beams at oncoming traffic, so long as the flashing is brief and conducted in such a manner that it does not blind or impair other drivers." *Sarber v. Comm'r of Pub. Safety*, 819 N.W.2d 465, 471-72 (Minn. App. 2012).

Appellant argues that, given the speed at which his car and the police officer's car converged, the flash of appellant's bright headlights was so brief that it could not have impaired the police officer's vision, and therefore it was not a traffic violation under *Sarber*. Appellant calculates that he could have flashed his headlights at the officer during a period of, at most, 1.28 seconds. The district court heard similar evidence and determined that the police officer credibly testified that appellant's "extremely bright" lights "just about blinded" him.

The district court's findings of fact are not clearly erroneous. Record evidence exists to support the conclusion that when appellant flashed his headlights, they were bright enough to impair an oncoming driver's vision. The district court found that the officer credibly testified that as appellant's vehicle crested the hill, appellant switched his headlights from dim to bright. The officer was within 200 feet of appellant's vehicle when appellant switched his lights from dim to bright. Appellant's headlights could have shone directly at the police officer given the higher position of the pickup truck's lights and the proximity of the two vehicles to one another. The district court did not clearly err in finding that the officer credibly testified that his vision was momentarily impaired by appellant's bright headlights. Nor did it err in determining that the violation—although minor—formed a particularized, objective basis for the officer's investigatory stop of appellant.

7

Appellant also argues that the officer was not in a legitimate position to observe appellant's vehicle crossing the centerline and the fog line because the officer had to break the speed limit to catch up to appellant. Minnesota law requires law enforcement to adhere to speed limits unless an officer is responding to an emergency call. Minn. Stat. § 169.17 (2014). Here, the officer was responding to what he believed to be a risk to the public, so he was not required to adhere to the speed limit.

## II.    Field sobriety tests

Appellant argues that the district court erred by admitting evidence obtained from field sobriety tests, because the tests are searches that must be supported by probable cause and a warrant or a warrant exception. We review the district court's conclusions of law de novo. *Thole v. Comm'r of Pub. Safety*, 831 N.W.2d 17, 19 (Minn. App. 2013), *review denied* (Minn. July 16, 2013).

Appellant relies on Colorado and Oregon law to support the proposition that field sobriety tests are full searches subject to the Fourth-Amendment warrant requirement. Minnesota precedent establishes otherwise, however. An officer needs only reasonable, articulable suspicion that a driver was driving while impaired before administering field sobriety tests and PBTs. *State, Dep't of Pub. Safety v. Juncewski*, 308 N.W.2d 316, 321 (Minn. 1981); *see also State v. Klamar*, 823 N.W.2d 687, 696 (Minn. App. 2012) (holding that administration of field sobriety testing was reasonable, based on an officer's observations of odor of alcohol and defendant's bloodshot and watery eyes); *State v. Crane*, 766 N.W.2d 68, 75 (Minn. App. 2009) (citing *Juncewski* for the proposition that "[i]ndicia

of intoxication give an officer reasonable articulable suspicion that a driver is operating a vehicle while under the influence"), *review denied* (Minn. Aug. 26, 2009); *State v. Vievering*, 383 N.W.2d 729, 730 (Minn. App. 1986) (stating that an officer may request a preliminary breath test on the basis of "specific and articulable facts"), *review denied* (Minn. May 16, 1986).

The officer's observations support reasonable, articulable suspicion that appellant was driving under the influence of alcohol. The officer testified that appellant failed to maintain lane position, there was a strong odor of alcohol coming from inside appellant's vehicle, appellant's eyes were bloodshot and watery and his speech was somewhat slurred, and appellant admitted to consuming alcohol prior to driving.

Appellant argues that *Missouri v. McNeely*, 133 S. Ct. 1552, 1561 (2013), requires law enforcement to obtain a warrant in drunk-driving investigations whenever doing so will not significantly undermine the search. But *McNeely* did not overrule Minnesota law requiring only articulable suspicion to administer field sobriety tests. *McNeely* dealt specifically with the application of the exigent-circumstances exception to a warrantless blood test. A blood test, "which involve[s] a compelled physical intrusion beneath [a suspect's] skin and into his veins," is subject to the Fourth-Amendment warrant requirement. *McNeely*, 133 S. Ct. at 1558. *McNeely* does not address whether field sobriety tests are subject to the Fourth-Amendment warrant requirement.

Appellant argues that his consent to the field sobriety tests would have served as a valid exception to the warrant requirement but that respondent failed to prove that he

voluntarily consented. We need not reach the question of whether appellant voluntarily consented, because field sobriety tests and PBTs are not full searches subject to the Fourth-Amendment warrant requirement. Since no warrant is required for such searches, no warrant exception is required.

## III. Exception to the warrant requirement for a breath test

Appellant argues that evidence from the DataMaster breath test is inadmissible because the officer did not obtain a search warrant before administering the test, and there is no proof of an exception to the warrant requirement. The district court concluded that appellant consented to the breath test, and the court admitted the test results.

A breath test is a search subject to the Fourth Amendment. *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 616-17, 109 S. Ct. 1402, 1412-13 (1989). Generally, a warrantless search conducted without probable cause is per se unconstitutional, *State v. Dezso*, 512 N.W.2d 877, 880 (Minn. 1994), but a search warrant is not required "if the subject of the search consents." *State v. Brooks*, 838 N.W.2d 563, 568 (Minn. 2013). Consent serves as an exception to the warrant requirement only if the state shows by a preponderance of the evidence that a defendant's consent to a search was free and voluntary. *Id.* "Whether consent was voluntary is determined by examining the totality of the circumstances, including the nature of the encounter, the kind of person the defendant is, and what was said and how it was said." *State v. Diede*, 795 N.W.2d 836, 846 (Minn. 2011) (quotation omitted); *see also Brooks*, 838 N.W.2d at 569 (applying the same analysis). A person does not consent simply by acquiescing to a claim of lawful authority.

*Brooks*, 838 N.W.2d at 569. Voluntariness is a question of fact that this court reviews under the clearly erroneous standard. *Diede*, 795 N.W.2d at 846.

In this case, the district court conducted a thorough analysis, following *Brooks*, and found that appellant voluntarily consented to the breath test. Regarding the "nature of the encounter," the district court found that the officer had probable cause to suspect that appellant was driving while impaired, that there was no evidence that appellant was ever subject to harsh treatment at the hands of law enforcement, and that appellant was given the opportunity to contact an attorney (even though his attempts were unsuccessful). The district court found that the nature of the encounter weighed in favor of the conclusion that appellant consented. Nothing in the record suggests that this is an erroneous conclusion.

The district court examined "the kind of person the defendant was" and found it weighed neither for or against a finding that appellant consented. In examining "what was said," the district court noted no irregularities in the manner in which the officer read the implied consent advisory to appellant or in the way appellant responded affirmatively. Following the reasoning in *Brooks*, the district court found that the "what was said" factor weighed in favor of finding that appellant consented. The district court also found that the circumstances that the *Brooks* court warned might amount to coercion—repeated police questioning and long periods in police custody—were not present in appellant's case, and therefore the "how it was said" factor weighed in favor of finding that appellant consented to the breath test.

11

Upon review, we find no evidence in the record to suggest that appellant's consent "was coerced in the sense that his will had been overborne and his capacity for self-determination critically impaired." *Brooks*, 838 N.W.2d at 571 (quotation omitted). "[A] driver's decision to agree to take a test is not coerced simply because Minnesota has attached the penalty of making it a crime to refuse the test." *Id.* at 570. The district court did not clearly err in concluding that appellant voluntarily consented to a breath test.

Because the district court did not err in determining that appellant consented to the breath test, this court need not reach appellant's argument that the breath test was a warrantless search that was not justified as a search incident to arrest.

**IV.    Constitutionality of test-refusal statute**

Appellant argues that Minnesota's test-refusal statute violates his constitutional right to due process of law and the doctrine of unconstitutional conditions. The constitutionality of a statute is a question of law that this court reviews de novo. *State v. Ness*, 834 N.W.2d 177, 181 (Minn. 2013). Minnesota statutes are presumed constitutional, and a statute should be upheld "unless the challenging party demonstrates that it is unconstitutional beyond a reasonable doubt." *Id.* at 181-82.

Minnesota's implied-consent law provides that "any person who drives, operates, or is in physical control of a motor vehicle within this state or on any boundary water of this state consents . . . to a chemical test of that person's blood, breath, or urine for the purpose of determining the presence of alcohol." Minn. Stat. § 169A.51, subd. 1(a) (2014). If a police officer has probable cause to believe that a person has committed a DWI offense

and the person has been arrested for DWI, the officer may require that person to submit to a chemical test. Minn. Stat. § 169A.51, subd. 1(b) (2014). At the time a police officer requests a person to submit to a breath test, the officer must inform the person that Minnesota law requires them to take the test and that refusal to take the test is a crime. Minn. Stat. § 169A.51, subd. 2(a) (2014). Minnesota's test-refusal statute provides that a person may refuse to submit to testing, and in such a case, "a test must not be given." Minn. Stat. § 169A.52, subd. 1 (2014); *see also Brooks*, 838 N.W.2d at 571 ("If a driver refuses the test, the police are required to honor that refusal and not perform the test.").

Appellant argues that Minnesota law unconstitutionally criminalizes his right to withhold consent to a warrantless search. But the Minnesota Supreme Court and the United States Supreme Court have held that a warrantless breath test is constitutional under the search-incident-to-arrest exception to the Fourth Amendment's warrant requirement. *State v. Bernard*, 859 N.W.2d 762, 772 (Minn. 2015), *aff'd sub nom. Birchfield v. North Dakota*, No. 14-1468, 2016 WL 3434398 (U.S. June 23, 2016). Applying *Bernard*, we hold that Minnesota's test-refusal statute does not violate appellant's constitutional right to due process of law, given that the test at issue here was a warrantless breath test.

Appellant's argument regarding the doctrine of unconstitutional conditions is precluded by *Bernard* and by this court's precedents.[1] The doctrine requires appellant to establish that the challenged statute authorizes an unconstitutional search. *State v. Bennett*,

---

[1] The district court apparently did not decide this issue, but appellant did argue in his trial brief that the statute violates the doctrine of unconstitutional conditions.

13

867 N.W.2d 539, 543 (Minn. App. 2015), *review denied* (Minn. Oct. 28, 2015), *cert. denied*, 2016 WL 3496844 (U.S. June 28, 2016). In *Bennett*, this court held that, under *Bernard*, the warrantless breath test the defendant refused would have been a lawful search incident to arrest and therefore would not have been an unconstitutional search. *Bennett*, 867 N.W.2d at 543. Because *Bernard* held that a warrantless breath test would have been constitutional under the search-incident-to-arrest exception, 859 N.W.2d at 767, Minnesota's test-refusal statute does not authorize an unconstitutional search and the unconstitutional-conditions doctrine does not apply. *Bennett*, 867 N.W.2d at 543; *see also Stevens v. Comm'r of Pub. Safety*, 850 N.W.2d 717, 731 (Minn. App. 2014) (holding that "Minnesota's implied-consent statute does not violate the unconstitutional-conditions doctrine by authorizing the commissioner of public safety to revoke the driver's license of a person who has been arrested for DWI and has refused to submit to chemical testing").

**Affirmed.**