Gregory Wayne PAQUIN, Petitioner,

v.

Kay MACK, Beltrami County Auditor, Respondent.

No. A10–1177.

Supreme Court of Minnesota.

Oct. 7, 2010.

Gregory Wayne Paquin, Bemidji, Minnesota, pro se.

Timothy R. Faver, Beltrami County Attorney, Bemidji, Minnesota, for respondent.

## OPINION

PER CURIAM.

The issue presented in this case is whether respondent Kay Mack, the Beltrami County Auditor, properly rejected a petition nominating petitioner Gregory Wayne Paquin as a candidate of the Minnesota Warriors for Justice Party for State Senator, Senate District 4. On June 1, 2010, Paquin filed a nominating petition bearing 557 signatures. County Auditor

Mack rejected 210 of the signatures on the petition,[1] leaving Paquin 157 signatures short of the 500 signatures required for a valid nominating petition for Senate District 4. *See* Minn.Stat. § 204B.08, subd. 3 (2008) (requiring signatures on a nominating petition for legislative office to equal "ten percent of the total number of individuals voting in the . . . legislative district at the last preceding state or county general election, or 500, whichever is less").

On July 9, 2010, Paquin petitioned our court under Minn.Stat. § 204B.44 (2008) for an order requiring County Auditor Mack to accept the petition. Paquin challenged only the rejection of those signatures for which a post office box, but not a residence address, was provided. The court received a response opposing the petition from County Auditor Mack. We issued an order on August 16, 2010, denying the petition but on August 19 withdrew the order for further consideration of the matter. After further review, we issued a second order on August 24, 2010, denying the petition, with this opinion to follow.

## I.

■ Candidates for partisan office who do not seek nomination by a major political party must be nominated by petition as provided in Minn.Stat. §§ 204B.07–.08 (2008). Minn.Stat. § 204B.03 (2008). Under Minn.Stat. § 204B.08, subds. 2, 3, nomination for legislative office requires the signatures of no more than 500 persons,

each of whom must be eligible to vote for the candidate who is being nominated.

Minnesota Statutes § 204B.07 provides the format for nominating petitions. Each person signing a nominating petition must "write on the petition the signer's residence address including street and number, if any, and mailing address if different from residence address." *Id.*, subd. 4. The Secretary of State's office provides a form for use by those nominating candidates for office. The form includes columns labeled "Date," "Year of Birth," "Print First, Middle, and Last Name," "Residence Address (number and street or box and route number)," "City or Township," and "County." Upon receipt of a nominating petition by the appropriate election official, the petition is to be inspected "to verify that there are a sufficient number of signatures of individuals whose residence address as shown on the petition is in the district where the candidate is to be nominated." Minn.Stat. § 204B.10, subd. 3 (2008).

Of the 557 signatures on the nominating petition at issue here, the County Auditor's review concluded that 23 were signatures of individuals living outside of the legislative district; 17 were signatures for which an incomplete street address (or a defective street address) was provided; one signature included an address but it was illegible; and three signatures were defective for other reasons. Paquin does not contest the County Auditor's rejection of these 44 signatures.

---

1. In the letter to Paquin notifying him that his nominating petition had been rejected and in an affidavit filed with our court, Mack indicates that 214 signatures on the nominating petition were defective, and provides a tally sheet showing for each page of the petition the number of signatures accepted and the number rejected for each of various defects. Mack has also filed the nominating petition itself with our court. The figures on the tally

sheet for page 6 of the petition appear to have been transposed: notations on the nominating petition itself indicate that seven signatures on page 6 were allowed and three signatures were rejected, but the tally sheet shows three signatures on page 6 were allowed and seven signatures rejected. With these adjustments, there were 210 defective signatures on the nominating petition.

Of the remaining 513 signatures, 166 signatures listed a post office box number in the column labeled "Residence Address." [2] Paquin argues that respondent Mack should have determined from other sources the residence address of these signers. For example, Paquin suggests, respondent could have contacted the post office to determine the residence address of the holder of the indicated post office box, or could have reviewed voting records from previous elections to confirm that the signature on the petition belonged to someone living in the district. But Minn. Stat. § 204B.10, subd. 3, requires the inspection of a nominating petition "to verify that there are a sufficient number of signatures of individuals *whose residence address as shown on the petition* is in the district where the candidate is to be nominated." (Emphasis added.) Nothing in section 204B.10 (2008) requires or even authorizes a county auditor (or the Secretary of State's office, if that is where the petition is filed) to consult other documents to confirm that the signer is a resident of the district.[3]

Paquin also argues that the County Auditor erred by not considering the city or township and county information that signers of his nominating petition provided. The form for nominating petitions provided by the Secretary of State's office indicates the signer is to provide "Residence Address (number and street or box and route number)"; in adjacent columns, the form indicates that the signer is to provide "City or Township" and "County." But the form does not clearly indicate that the city or township and county information requested of the signer must be the city or township and county of the signer's residence. It is possible that those signers of Paquin's nominating petition who provided only a post office box number in the "Residence Address" column then listed the city or township and county of their residence in the adjacent columns. But it is equally possible that signers who provided only a post office box number in the "Residence Address" column and then listed a city or township and county in the adjacent columns intended that information to convey the location of the post office where the signer maintains the post office box.[4] In-

2. County Auditor Mack's tally sheet indicates there were 170 signatures for which a post office box, but not a residence address, was provided. Adjusting for the transposed figures for page 6 of the nominating petition, *see supra* note 1, leaves 166 signatures for which a post office box, but not a residence address, was provided.

3. Paquin has not shown that the post office has any obligation to reveal to a county auditor the residence addresses of those renting post office boxes. *See* 39 U.S.C. § 410(c)(1) (2006) (exempting "the name or address, past or present, of any postal patron" from disclosure required by other federal laws). Nor has Paquin shown that a person's 2006 or 2008 voting record establishes that the person still resides in the district and is otherwise eligible to vote for him in 2010.

4. In addition, some petition signers who listed a post office box number in the "Residence Address" column also wrote a city or township in both the "Residence Address" column and the "City or Township" column. The inference is stronger that for these signers, the city or township written with the post office box number in the "Residence Address" column relates to the city or township where the post office is located and the city or township written in the "City or Township" column is the city or township in which the signer resides. However, even if we were to hold that the County Auditor should not have rejected those signatures for lack of a valid residence address, Paquin's nominating petition still would not have the 500 valid signatures necessary. We therefore need not address, and do not decide, whether the County Auditor erred in rejecting signatures for which a post office box and city or township, but not a street address, was provided in the "Residence Address" column.

deed, the latter seems more likely, because the post office box number by itself, without the location of the post office, would be meaningless. Moreover, the form of the petition does not explicitly designate the "City or Township" and "County" columns as part of the residence address,[5] and none of the signers who entered information in those columns, after entering a post office box in the residence address column, designated the additional information as relating to their residence address.

Paquin has the burden to prove that leaving his name off the ballot is an error that must be corrected under Minn. Stat. § 204B.44. *See, e.g., Lundquist v. Leonard,* 652 N.W.2d 33, 36 (Minn.2002); *Olson v. Zuehlke,* 652 N.W.2d 37, 40 (Minn.2002). Paquin cannot meet this burden unless he shows that the petition signers whose signatures were rejected for lack of a residence address provided information on the petition sufficient to establish that the signer lived within the legislative district. *See* Minn.Stat. § 204B.08, subd. 2 (noting that signatures must be from people who are eligible to vote in the legislative district). The fact that some signers listed post office box information does not meet this burden because there is no requirement that a post office box in a particular post office be rented only by someone living in the area served by that post office. A post office box therefore provides no information about the location of the box renter's residence. Moreover, Paquin has not provided any other evidence from any signers of his nominating petition who listed a post office box, rather than a street address, attesting that he or she intended the city or township and

county listed on the petition to convey their residence address. *See* Minn.Stat. § 204B.07, subd. 4 (noting that "the signer shall write on the petition the signer's residence address"). On this record, we conclude that Paquin has not met his burden to prove that Mack erred or violated Minn.Stat. § 204B.10 in rejecting the signatures of those who listed only a post office box in the residence address column of the nominating petition forms.

Combined with the County Auditor's rejection of 44 signatures for other reasons, which Paquin does not contest here, the rejection of 166 signatures for which a post office box number was provided, rather than a street address, leaves Paquin with 347 valid signatures—153 signatures short of the 500 signatures required by Minn. Stat. § 204B.08 for a valid nominating petition for Senate District 4. We therefore hold that the County Auditor did not err in refusing to place Paquin's name on the ballot as a candidate for Senate District 4.

## II.

Paquin further argues that the County Auditor's rejection of his petition violated 28 U.S.C. § 1360(a) (2006), which gives Minnesota

> jurisdiction over civil causes of action between Indians or to which Indians are parties which arise in the areas of Indian country listed ... to the same extent that such State has jurisdiction over other civil causes of action, and those civil laws of such State that are of general application to private persons or private property shall have the same force and effect within such Indian country as they have elsewhere within the State.

---

**5.** In addition, despite the statutory requirement that the signers write both their residence address and their mailing address, if the addresses differ, the form contains no area designated for entry of a mailing address. More clearly labeled columns on the nominating petition form might avoid some of the problems presented by this case in the future.

Section 1360(a) is part of what is commonly known as "Public Law 280." In *Bryan v. Itasca County*, the United States Supreme Court interpreted Public Law 280 to give Minnesota state courts jurisdiction over private civil litigation involving reservation Indians, but not to give Minnesota general civil regulatory authority over tribal members living on the reservation. 426 U.S. 373, 385, 388–90, 96 S.Ct. 2102, 48 L.Ed.2d 710 (1976). Paquin contends that Minn.Stat. § 204B.10 is a civil regulatory law that cannot be enforced in Indian country.

■ Even if we were to conclude that Minn.Stat. § 204B.10 is a civil regulatory law, it would not end our inquiry. Public Law 280 does not bar assertion by the State of jurisdiction over activities of Indians "going beyond reservation boundaries." *Mescalero Apache Tribe v. Jones*, 411 U.S. 145, 148–49, 93 S.Ct. 1267, 36 L.Ed.2d 114 (1973) (citing *Puyallup Tribe v. Dep't of Game*, 391 U.S. 392, 398, 88 S.Ct. 1725, 20 L.Ed.2d 689 (1968); *Organized Vill. of Kake v. Egan*, 369 U.S. 60, 75–76, 82 S.Ct. 562, 7 L.Ed.2d 573 (1962); *Shaw v. Gibson–Zahniser Oil Corp.*, 276 U.S. 575, 48 S.Ct. 333, 72 L.Ed. 709 (1928)). Running for state legislative office and signing a nominating petition for state legislative office are activities "going beyond reservation boundaries." In seeking to become a candidate for state legislative office, and in signing the nominating petition, petitioner and his supporters are subject to state election laws.

■ Moreover, even if the nominating process and candidacy for state legislative office did not constitute off-reservation conduct, the Supreme Court has also held that "in exceptional circumstances a State may assert jurisdiction over the on-reservation activities of tribal members." *New Mexico v. Mescalero Apache Tribe*, 462 U.S. 324, 331–32, 103 S.Ct. 2378, 76 L.Ed.2d 611 (1983). More particularly, "the state interests at stake" may be "sufficient to justify the assertion of state authority," even if state jurisdiction "interferes or is incompatible with federal and tribal interests reflected in federal law." *Id.* at 334, 103 S.Ct. 2378. The tribal interests to be balanced against state interests are "traditional notions of Indian sovereignty" and the congressional goal of Indian self-government, including its "overriding goal of encouraging 'tribal self-sufficiency and economic development.'" *Id.* at 334–35, 103 S.Ct. 2378 (citation omitted). Petitioner Paquin has not shown how uniform enforcement of state election laws in an election for state legislative office (in contrast, for example, to an election for tribal office) interferes with or is incompatible with tribal self-sufficiency or tribal economic development. Even if he had, the State's strong interest in the uniform enforcement of state election laws in an election for state legislative office would be sufficient to justify the assertion of state authority.

We therefore hold that in applying state election law to reject petition signatures for which no residence address was provided, respondent Mack did not violate 28 U.S.C. § 1360(a).

## III.

■ Petitioner Paquin further argues that respondent Mack is estopped from rejecting the nominating petition because of advice Paquin alleges he received from the Secretary of State's office. Paquin alleges that he was told by a member of the Secretary of State's staff that a post office box along with a township would be sufficient. The staff member with whom Paquin spoke denies Paquin's version of the conversation.

We need not resolve the factual dispute in order to decide this issue, because even

if Paquin had been advised that a post office box was acceptable, such advice would not be sufficient to require respondent Mack to accept the challenged signatures. The Secretary of State's office has no authority to change state law, under which, as we have noted, a post office box alone is not acceptable to establish eligibility to vote for the candidate being nominated. *See Kmart Corp. v. Cnty. of Stearns*, 710 N.W.2d 761, 771–72 (Minn. 2006) (holding that an agency's "good-faith interpretation of a statute, even if erroneous," does not create a cause of action for estoppel); *Axelson v. Minneapolis Teachers' Ret. Fund Ass'n*, 544 N.W.2d 297, 299–300 (Minn.1996). Regardless of the advice Paquin received, he was still obligated by state law to file a nominating petition with at least 500 signatures for which "the signer's residence address including street and number, if any" was provided, Minn.Stat. § 204B.07, subd. 4, in order to be properly nominated and to appear on the November 2010 general election ballot. The County Auditor correctly rejected signatures that did not adequately identify a residence address in the election district.

## IV.

With his reply brief, petitioner Paquin submitted voter registration lists from Beltrami County that, according to petitioner, show that respondent Mack has allowed Indian voters to register to vote in the past without a residence address. We understand Paquin's reply to argue that Mack's strict enforcement of the residence address requirement with respect to his nominating petition violated his right to equal protection under the law. *See* U.S. Const. amend. XIV; Minn. Const. art. I, § 2. We do not usually address issues raised for the first time in a reply. *See, e.g., State v. Yang*, 774 N.W.2d 539, 558 (Minn.2009). But we can address arguments raised for the first time in a reply in the interests of justice, and we do so in this case.

To establish that he has been denied equal protection of the laws, Paquin must show that similarly situated persons have been treated differently. *See Hale v. Viking Trucking Co.*, 654 N.W.2d 119, 125 (Minn.2002). This is so because the guarantee of equal protection does not require that the State treat persons who are differently situated as though they were the same. *State v. Behl*, 564 N.W.2d 560, 568 (Minn.1997).

The language of the voter registration statutes and the statute governing nominating petitions differs. The statute governing nominating petitions requires signers to provide "the signer's residence address including street and number, if any, and mailing address if different from residence address." Minn.Stat. § 204B.07, subd. 4. No statute governing voter registration uses this language to describe the information that a prospective voter must provide in order to register to vote. *See, e.g.,* Minn.Stat. § 201.071, subd. 1 (2008) (providing that a voter registration application must contain spaces for, among other things, "voter's current address"); *Id.,* subd. 3 (2008) (providing that a voter registration application is not deficient if it contains "the voter's name, address"); Minn.Stat. § 201.091, subd. 1 (2008) (requiring county auditors to maintain a "master list" of registered voters in the county showing, among other things, "residence address"). Moreover, even if respondent Mack failed to strictly enforce the requirements for registering to vote, "an erroneous or mistaken performance of [a] statutory duty ... is not without more a denial of the equal protection of the laws." *Snowden v. Hughes*, 321 U.S. 1, 8, 64 S.Ct. 397, 88 L.Ed. 497 (1943); *see also Sheehan v.*

*Franken (In re Contest of Gen. Election),* 767 N.W.2d 453, 464 (Minn.2009) ("[T]o prevail on his equal protection claim of disparate application of a facially neutral statute, Coleman was required to prove ... that local jurisdictions' differences in application ... of the requirements for absentee voting was the product of intentional discrimination."). Thus, even if the language of the voter registration and nominating petition statutes were the same, it would not be enough for petitioner Paquin to prove that respondent Mack has differed in her enforcement of the residence address requirement over time; he must also prove that such differences were the result of intentional discrimination. Paquin has not made such a showing.

We therefore hold that in denying Paquin's nominating petition for lack of sufficient signatures, the County Auditor did not violate Minnesota law and did not violate Paquin's constitutional rights.

Petition denied.