*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-1121**

Ronald Lindsey Reed,
Appellant,

vs.

Minnesota Department of Corrections, et al.,
Respondents.

**Filed April 8, 2024**
**Affirmed**
**Slieter, Judge**

Anoka County District Court
File No. 02-CV-22-3098

Zachary A. Longsdorf, Longsdorf Law Firm, PLC, Inver Grove Heights, Minnesota (for appellant)

Keith Ellison, Attorney General, Elizabeth Johnston, Assistant Attorney General, St. Paul, Minnesota (for respondents)

Considered and decided by Slieter, Presiding Judge; Cochran, Judge; and Wheelock, Judge.

**NONPRECEDENTIAL OPINION**

**SLIETER**, Judge

Appellant challenges the denial of his petition for a writ of habeas corpus, arguing that the district court erred because the impact caused by changes to the parole authority and process, which makes it more difficult to receive parole, violate several of his constitutional rights. Because appellant has not demonstrated that the changes to the parole

authority and process in determining parole requests violate his constitutional rights, we affirm.

## FACTS

In 2006, appellant Ronald Lindsey Reed received a life sentence for aiding and abetting the murder of a St. Paul police officer in 1970.[1] Reed was sentenced pursuant to Minn. Stat. § 609.185 (1969), which required him to serve a minimum of 20 years' imprisonment before becoming eligible for parole, Minn. Stat. § 243.05 (1969).[2]

Reed became eligible for parole in 2021. In 2021, Reed was provided an advisory panel review hearing, after which the commissioner decided to continue Reed's review for three years.

Reed petitioned the district court for a writ of habeas corpus against respondents Minnesota Department of Corrections (DOC), commissioner Paul Schnell, Lino Lakes Correctional Facility, and warden Shannon Reimann. Reed challenged the procedures used to determine his parole eligibility, arguing that he is entitled to have his parole determined by the procedures and policies that were in place at the time of the offense. The district court denied Reed's petition, concluding that there is no liberty interest in parole and that none of Reed's constitutional rights were violated. Reed appeals.

---

[1] Reed's conviction was affirmed in 2007. *State v. Reed*, 737 N.W.2d 572 (Minn. 2007).
[2] It is unclear whether Reed had to serve a minimum of 20 years' imprisonment or 25 years' imprisonment before becoming eligible for parole. We identify 20 years because it is the prison term referenced by the district court.

**DECISION**

A writ of habeas corpus is a statutory civil remedy by which a petitioner may "obtain relief from [unlawful] imprisonment or restraint." Minn. Stat. § 589.01 (2022). It is an "extraordinary remedy." *State ex rel. Young v. Schnell*, 956 N.W.2d 652, 673-74 (Minn. 2021).

For the district court to grant a petition for a writ of habeas corpus, the petition must allege "sufficient facts to establish a prima facie case for [the petitioner's] discharge." *State ex rel. Fife v. Tahash*, 111 N.W.2d 619, 620 (Minn. 1961); *see also Case v. Pung*, 413 N.W.2d 261, 262 (Minn. App. 1987) (stating that the petitioner has the burden of showing that they are being illegally detained), *rev. denied* (Minn. Nov. 24, 1987). And the district court will grant a petitioner's request for an evidentiary hearing "only if a factual dispute is shown by the petition." *Seifert v. Erickson*, 420 N.W.2d 917, 920 (Minn. App. 1988), *rev. denied* (Minn. May 18, 1988).

This court may affirm the denial of a habeas petition when the petition, on its face, fails to present a case for issuing a writ of habeas corpus. *State ex rel. Nelson v. Rigg*, 107 N.W.2d 378, 379 (Minn. 1961). We review questions of law pertaining to a habeas corpus proceeding *de novo*, but we afford "great weight" to the district court's findings of fact, which will not be reversed absent clear error. *State ex rel. Ford v. Schnell*, 933 N.W.2d 393, 401, 406-07 (Minn. 2019) (quotation omitted).

***Procedural Due Process***

Both the United States and Minnesota Constitutions prohibit the state from depriving persons of life, liberty, or property without due process of law. U.S. Const.

3

amend. XIV, § 1; Minn. Const. art. I, § 7. Whether due process is required is a question of law that appellate courts review *de novo*. *Carrillo v. Fabian*, 701 N.W.2d 763, 768 (Minn. 2005).

"While a prison inmate does not enjoy the full range of rights and privileges available to ordinary citizens, he does not surrender all of his constitutional rights upon incarceration." *Id.* The government must, therefore, provide inmates with due process before they are deprived a protected liberty interest. *Id.* Determining whether due process is implicated in a particular case is a two-step inquiry. First, the court must determine whether the state deprived the complainant of a constitutionally protected liberty interest. *Id.* Second, if the state deprived the complainant of a protected liberty interest, the court must determine whether the deprivation followed constitutionally sufficient procedures. *Id.*

Relying on *State ex rel. Taylor v. Schoen*, 273 N.W.2d 612 (Minn. 1978), Reed argues that the district court erred in determining that he does not have a liberty interest in parole. Subsequent caselaw compels our disagreement.

*Taylor*, relying on federal caselaw, concluded that inmates have a liberty interest in parole and held "that parole release decision-making must be conducted in accordance with the due process requirements of the Fourteenth Amendment." 273 N.W.2d at 617. In so holding, the court relied on *Inmates of the Neb. Penal & Corr. Complex v. Greenholtz*, 576 F.2d 1274 (8th Cir. 1978), which was subsequently reversed by the United States Supreme Court. In *Greenholtz v. Inmates of the Neb. Penal & Corr. Complex*, 442 U.S. 1 (1979), the United States Supreme Court compared a discretionary parole decision with the

4

possibility of obtaining conditional release and an inmate's hope of not being transferred to a different prison. It explained:

> That the state holds out the *possibility* of parole provides no more than a mere hope that the benefit will be obtained. . . . [T]he general interest asserted here is no more substantial than the inmate's hope that he will not be transferred to another prison, a hope which is not protected by due process.

*Id.* at 10-11.

Because the United States Supreme Court determined that the Fourteenth Amendment does not provide inmates with a liberty interest in an initial parole decision, *id.*, Reed's reliance on *Taylor* is misplaced. And, notably, Reed did not separately base his claim upon article I, section 7 of the Minnesota Constitution.

Because the Fourteenth Amendment of the United States Constitution does not provide inmates with a liberty interest in parole, and because Reed advances no due-process argument arising from the Minnesota Constitution, the district court properly determined that Reed does not have a liberty interest in parole. The district court, therefore, did not err in rejecting Reed's procedural-due-process claim. *See Phillips v. State*, 725 N.W.2d 778, 782-83 (Minn. App. 2007) ("Without a protected interest, the government has no constitutional obligation to provide due process."), *rev. denied* (Minn. Mar. 28, 2007).

**Substantive Due Process**

Substantive due process protects individuals against "certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *In re Linehan*, 594 N.W.2d 867, 872 (Minn. 1999) (quotation omitted). "When assessing

a due process challenge, the analysis [appellate courts] apply depends on whether the statute implicates a fundamental right." *State v. Bernard*, 859 N.W.2d 762, 773 (Minn. 2015).

When a fundamental right is at stake, appellate courts apply the strict-scrutiny test to substantive-due-process challenges under which "the state must show a legitimate and compelling interest for abridging that right." *Boutin v. LaFleur*, 591 N.W.2d 711, 716 (Minn. 1999). But when no fundamental right is at stake, appellate courts apply the rational-basis test, and a challenged statute will be deemed constitutional if it "provide[s] a reasonable means to a permissible objective." *Id.*

Reed did not present a rational-basis or strict-scrutiny analysis in the district court, and neither does he do so on appeal. "[O]n appeal error is never presumed. It must be made to appear affirmatively before there can be reversal . . . [and] the burden of showing error rests upon the one who relies upon it." *Waters v. Fiebelkorn*, 13 N.W.2d 461, 464-65 (Minn. 1944). Moreover, we typically will not address claims not argued before and considered by the district court. *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (stating that appellate courts generally address only those questions previously presented to and considered by the district court). We may consider a new argument on appeal in the interest of justice, Minn. R. Civ. App. P. 103.04, but we decline to do so here because Reed failed to present a rational-basis or strict-scrutiny analysis for this court to review.

***Equal Protection***

Both the United States and Minnesota Constitutions guarantee similarly situated individuals equal protection under the law. U.S. Const. amend. XIV, § 1; Minn. Const.

6

art. I, § 2. "To establish that he has been denied equal protection of the laws, [Reed] must show that similarly situated persons have been treated differently." *Paquin v. Mack*, 788 N.W.2d 899, 906 (Minn. 2010). "[T]his threshold showing [is required] 'because the guarantee of equal protection does not require that the State treat persons who are differently situated as though they were the same.'" *State v. Cox*, 798 N.W.2d 517, 521 (Minn. 2011) (quoting *Paquin*, 788 N.W.2d at 906). Courts "routinely reject[] equal-protection claims when a party cannot establish that he or she is similarly situated to those whom they contend are being treated differently." *Id.*

Reed claims that the district court erred in denying his equal-protection claim without an evidentiary hearing. The district court found that Reed failed to make the preliminary showing that he is being treated differently than similarly situated individuals. Reed contends that he was unable to make a preliminary showing without an evidentiary hearing, which would necessarily be preceded by discovery.

Inmates are not entitled to discovery during habeas proceedings unless their petition alleges facts that, if proved, demonstrate that the inmate is entitled to relief. *See Bracy v. Gramley*, 520 U.S. 899, 904, 908-09 (1997) (noting habeas petitions are not typically entitled to discovery, but discovery may be needed when the petition alleges facts that, if fully developed, may demonstrate that the petitioner is entitled to relief); *see also State ex rel. Roy v. Tahash*, 152 N.W.2d 301, 305 (Minn. 1967) (noting Minnesota's standards "substantially equate those required of the Federal trial courts"). Reed's petition summarily states that "[a]s a result of the Respondents' failure to treat Reed consistently

with other defendants serving sentences under the statutes in effect . . . in May 1970, Reed has been denied the equal protection of the law."

Reed alleges no facts indicating that individuals who aided and abetted first-degree murder were treated differently than him. Because Reed's petition fails to allege facts that, if proved, would entitle him to relief, the district court properly determined that he failed to make the threshold showing that he is being treated differently than similarly situated persons, and its finding is not clearly erroneous. And, because Reed failed to make a threshold showing, the district court did not err in denying his petition without an evidentiary hearing.

### Ex Post Facto

Both the United States and Minnesota Constitutions prohibit the enactment of ex post facto laws. U.S. Const. art. I, § 9, cl. 3; Minn. Const. art. I, § 11. Whether a law violates the constitutional prohibition on ex post facto laws is a legal question appellate courts review *de novo*. *Rew v. Bergstrom*, 845 N.W.2d 764, 790 (Minn. 2014).

The prohibition on ex post facto laws forbids "laws that render an act punishable in a manner in which it was not punishable when it was committed." *Id.* (quotation omitted). A law falling within the ex post facto prohibition "must be a criminal or penal law, it must not be merely procedural, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." *Id.* (quotation and citation omitted).

Reed claims that the changes to the decision-making body and the information that the decision-maker must consider when determining whether parole is appropriate presents an ex post facto violation. In particular, he points to the new requirement that, prior to

8

considering a parole request, the commissioner must hear from the victim. This requirement, Reed claims, significantly reduces the likelihood that parole will be granted in comparison to when victim input was not required.

Although the legislature has changed the composition of the decision-making body responsible for determining whether to grant parole, changes to the decision-making body are procedural and, therefore, do not violate the constitutional prohibition on ex post facto laws. *See Hankerson v. State*, 723 N.W.2d 232, 241-42 (Minn. 2006) (citing *Dobbert v. Florida*, 432 U.S. 282, 292-94 (1977) (holding that changing the roles of judge and jury was procedural and, therefore, not an ex post facto violation)).

And because considering victim input in parole decisions, like other procedural changes, does not change the definition of the crime, available defenses, or punishment for the offense for which Reed was convicted, we likewise find no ex post facto violation in this respect either. At the time of the offense, the statutory punishment for aiding and abetting first-degree murder was life imprisonment. Minn. Stat. § 609.185, subd. 1 ("Whoever . . . is guilty of murder in the first degree . . . shall be sentenced to imprisonment for life . . . ."). That is the sentence the district court imposed. The additional requirement to consider victim input during the parole process does not "render [aiding and abetting first-degree murder] punishable in a manner in which it was not punishable when it was committed." *Rew*, 845 N.W.2d at 790 (quotation omitted). The additional requirement directing the commissioner to consider victim input when determining whether parole is proper, therefore, is merely procedural and does not violate the constitutional prohibition against ex post facto laws.

9

*Separation of Powers*

"[T]he power to prescribe punishment for criminal acts is vested with the legislature and the judiciary may only impose sentences within the statutory limits prescribed by the legislature." *State v. Pflepsen*, 590 N.W.2d 759, 764 (Minn. 1999).

Reed claims that "it is a violation of the separation of power[s] doctrine to allow the legislature to modify the terms and condition[s] of his sentence after the court exercised its judicial authority to sentence him based upon the limits put in place by the legislature at the time of the offense." Reed's claims rest on his unsupported premise that changes to the parole process have made it more difficult for him to receive parole. Reed was sentenced pursuant to Minn. Stat. § 609.185, which required him to serve a minimum of 20 years' imprisonment, "less the diminution which would have been allowed for good conduct had his sentence been for 20 years," before becoming eligible for parole. Minn. Stat. § 243.05. Even if we accept Reed's premise, a change in the parole process purportedly making it more difficult to get parole "does not alter the sentence of the court or impose a new sentence." *State v. Schwartz*, 628 N.W.2d 134, 140 (Minn. 2001). Because the changes to the parole process did not impact Reed's sentence, the district court properly determined that the changes in the parole authority and considerations does not violate separation of powers.

**Affirmed.**