STATE OF MINNESOTA

IN SUPREME COURT

A23-1900

Original Jurisdiction

Binkley for President 2024, et al.,

Petitioners,

vs.

Steve Simon, Minnesota Secretary of State,

Respondent.

Per Curiam
Took no part, Hennesy, J.

Filed: June 5, 2024
Office of Appellate Courts

_____

Erick G. Kaardal, Mohrman, Kaardal & Erickson, P.A., Minneapolis, Minnesota, for petitioners.

Keith Ellison, Attorney General, Nathan J. Hartshorn, Sarah Doktori, Assistant Attorneys General, Saint Paul, Minnesota, for respondent.

_____

S Y L L A B U S

Minnesota Statutes section 207A.13, subdivision 2(a) (2022), does not violate the Electors Clause of the United States Constitution because statutes that govern the presidential nomination primary do not fall within the scope of the Electors Clause.

Petition denied.

1

PER CURIAM.

Petitioner Ryan Binkley asked the Republican Party of Minnesota to include his name on its ballot for the 2024 presidential nomination primary. When the Chair of the Republican Party of Minnesota notified respondent Steve Simon, the Minnesota Secretary of State, of the candidates for its ballot in the 2024 presidential nomination primary, Binkley was not included as a candidate. On December 13, 2023, petitioners Binkley and his campaign committee, Binkley for President 2024, filed a petition with our court under Minnesota Statutes section 204B.44 (2022), asking that we direct the Secretary of State to include Binkley's name as a candidate on the presidential nomination primary ballot of the Republican Party of Minnesota. Petitioners assert that the procedures established by Minnesota Statutes section 207A.13, subdivision 2(a) (2022), which authorize a major political party to determine the candidates that will appear on its ballot for the presidential nomination primary, violate the Electors Clause of the United States Constitution.

We directed the parties to file briefs addressing petitioners' claim. We held oral argument on January 11, 2024. In an order filed on January 11, 2024, we denied the petition. This opinion explains the reasons for our decision.

## FACTS

Before turning to the facts, some background on Minnesota's electoral processes for presidential nominees and candidates will be helpful to understanding the legal issues presented by this dispute.

In general, a primary election determines which candidates will advance to the general-election ballot, including as a nominee of a major political party. *See* Minn. Stat. § 204D.10, subd. 1 (2022) ("The candidate for nomination of a major political party for a partisan office on the state partisan primary ballot who receives the highest number of votes shall be the nominee of that political party for that office."). Most candidates seeking the nomination of a major party for a public office file an affidavit of candidacy to appear on a primary election ballot. *See* Minn. Stat. § 204B.03 (2022) ("Candidates of a major political party for any partisan office except presidential elector . . . shall apply for a place on the primary ballot by filing an affidavit of candidacy . . . ."). Thus, the major political parties do not control access to the ballot in these primary elections.

State elections for presidential nominees and candidates proceed in a different fashion. In 2016, the Minnesota Legislature enacted chapter 207A, establishing a presidential nomination primary. *See* Act of May 22, 2016, ch. 162, §§ 9–13, 2016 Minn. Laws 605, 609–12. This primary is limited to participation by "a major political party that selects delegates . . . to send to a national convention." Minn. Stat. § 207A.11(d) (2022). "A major political party that does not participate in a national convention is not eligible to participate in the presidential nomination primary."[1] *Id*.

---

[1] For minor political parties and independents, the presidential candidates and presidential electors are nominated by petition. Minn. Stat. § 204B.07, subd. 2 (2022) (stating that "presidential electors or alternates" for candidates other than those nominated by major political parties "are nominated by petition" and that this petition states "the names of the candidates for president and vice-president").

3

Each participating political party has a presidential primary ballot.  Minn. Stat. § 207A.13, subd. 1(b) (2022).  The party "must determine which candidates are to be placed on the presidential nomination primary ballot for that party."  *Id.*, subd. 2(a).  The candidate names must be given to the Secretary of State by the party chair "no later than 63 days" before the primary election.  *Id.*  "Once submitted, changes must not be made to the candidates that will appear on the ballot."  *Id.*  The party chair can ask the Secretary of State to include a "blank line printed below the other choices on the ballot so that a voter may write in the name of a person who is not listed on the ballot."  *Id.*, subd. 1(c) (2022).  No less than 7 days before the primary, the party chair must submit "the names of write-in candidates, if any, to be counted for that party."  *Id.*, subd. 2(b) (2022).

Once the results of the primary election are declared, "the secretary of state must notify the chair of each party of the results."  Minn. Stat. § 207A.12(c) (2022).  Unlike in other primary elections, the winner of the presidential nomination primary does not necessarily appear on the general election ballot.  Instead, the party chair informs the Secretary of State of their party's presidential candidate for the general election ballot.  *See* Minn. Stat. §§ 208.03–.04 (2022).

With this overview in mind, we turn to the facts, which are undisputed.  The 2024 Minnesota presidential nomination primary occurred on March 5, 2024.  Binkley, a Texas resident, is seeking the Republican nomination for United States President in 2024.  Binkley wanted to be listed on the 2024 presidential nomination primary ballot of the Republican Party of Minnesota.  Binkley asked the Republican Party of Minnesota to

4

include his name on its presidential nomination primary ballot. Binkley was told that the party was using the following criteria to appear on that ballot:

1. met the threshold to appear in the first [Republican National Committee] debate in Milwaukee or
2. previously held or currently held at least one of these offices: President or Vice President of the United States, United States Senator or Congressman, Governor in any state, or mayor of a United States City with a population of more than 250,000.

Binkley does not meet either criterion. The Republican Party of Minnesota offered to have any write-in votes for Binkley counted, but the record does not show how Binkley responded to this offer.

The Republican Party of Minnesota gave the Secretary of State a list of candidates for the 2024 presidential nomination primary. Binkley was not on this list.

## ANALYSIS

Petitioners contend that the procedures established by Minnesota Statutes section 207A.13, subdivision 2(a), which authorize a major political party to determine the candidates that will appear on its ballot for the presidential nomination primary, violate the Electors Clause of the United States Constitution. According to petitioners, the Electors Clause prohibits state-based favoritism on ballots through the exclusion of qualified candidates. The Secretary of State, in response, asserts that petitioners' claim fails as a matter of law.

Statutes are presumed constitutional, and "the party that asserts otherwise bears a heavy burden to overcome that presumption." *Kimberly-Clark Corp. v. Comm'r of Revenue*, 880 N.W.2d 844, 848 (Minn. 2016). A party filing a petition under Minnesota

5

Statutes section 204B.44 also bears the burden of proof to demonstrate that there is an error that requires correction. *See Paquin v. Mack*, 788 N.W.2d 899, 904 (Minn. 2010) (explaining that the petitioner asserting that a ballot error or omission exists bears the burden of showing that a correction is required).

The Electors Clause in the United States Constitution provides:

> Each State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors, equal to the whole Number of Senators and Representatives to which the State may be entitled in the Congress:  but no Senator or Representative, or Person holding an Office of Trust or Profit under the United States, shall be appointed an Elector.

U.S. Const. art. II, § 1, cl. 2.  The vote by the electors, in turn, is used to determine who becomes president. *See* U.S. Const. amend. XII.

To prove a violation of the Electors Clause, petitioners must first establish that the Electors Clause applies to Minnesota Statutes section 207A.13, subdivision 2(a). Petitioners assert that because the presidential election process in Minnesota begins with the presidential nominating primary, the Electors Clause applies to section 207A.13.  The Secretary of State, on the other hand, argues that the presidential nomination primary is not subject to the Electors Clause.  Because Minnesota does not use the presidential nomination primary to appoint presidential electors, the Secretary of State contends that Minnesota Statutes section 207A.13 (2022) does not implicate the Electors Clause.  We agree with the Secretary of State.

We begin with the text of the Electors Clause itself, which does not mention presidential nomination primaries. *See* U.S. Const. art. II, § 1, cl. 2.  Instead, it grants states the power to "appoint" *presidential electors*, in the "[m]anner" determined by the

6

legislature of the state. *Id.*; *see also McPherson*, 146 U.S. at 35 (stating that the Electors Clause gives "plenary power to the state legislatures in the matter of the appointment of electors").

There is also an absence of case law on the issue raised here. We have not addressed the Electors Clause. The United States Supreme Court has only a few decisions addressing the Electors Clause. These cases, however, involve challenges to the method a state legislature adopted for choosing electors, *McPherson v. Blacker*, 146 U.S. 1, 35 (1892) (holding a Michigan statute providing for the election of presidential electors by congressional district did not violate the Electors Clause), or challenges to a state law that applies to electors, *Chiafalo v. Washington*, 591 U.S. 578, 581, 585–86 (2020) (holding a Washington statute imposing a fine on an elector who did not vote in accordance with their pledge to support the nominee of their party did not violate the Electors Clause). We have not found any Electors Clause decision that involves a presidential nomination primary.

Against this backdrop, we examine Minnesota's election statutes to determine whether the process used for appointing electors—which does implicate the Electors Clause—involves the presidential nomination primary. In Minnesota, presidential electors are appointed based on the results of the popular vote for president at the general election. *See* Minn. Stat. § 208.02 (2022) ("Presidential electors and alternates [are] chosen at the state general election held in the year preceding the expiration of the term of the president of the United States."); Minn. Stat. § 208.04, subd. 1 (stating that "a vote cast for the party candidates for president and vice president shall be deemed a vote for that party's electors and alternates as filed with the secretary of state"); Minn. Stat. § 208.05 (2022) (requiring

7

the State Canvassing Board to "canvass the returns . . . for presidential electors and alternates . . . and declare the person or persons receiving the highest number of votes for each office duly elected"). The winner of the presidential nomination primary does not automatically become that party's candidate for president in Minnesota's general election because that party nominates its candidate at a national convention. *See* Minn. Stat. § 207A.11(d) (stating that the presidential nomination primary only applies to "major political part[ies] that select[] delegates at the presidential nomination primary to send to a national convention"). Before the general election, the party chair "certif[ies] to the secretary of state the names of the persons nominated as presidential electors, the names of persons nominated as alternate presidential electors, and the names of the party candidates for president and vice president," Minn. Stat. § 208.03, and those candidates for president and vice president are placed on the general election ballot, Minn. Stat. § 208.04, subd. 1. Minnesota's presidential nomination primary simply does not determine the appointment of presidential electors in Minnesota.

Petitioners' claim is also inconsistent with our characterization of the presidential nomination primary. "[A]lthough the Secretary of State and other election officials administer the mechanics of the" presidential nomination primary election, "this is an internal party election to serve internal party purposes." *Growe v. Simon*, 997 N.W.2d 81, 82 (Minn. 2023) (order). The presidential nomination primary is "a process that allows political parties to obtain voter input in advance of a nomination decision made at a national convention." *De La Fuente v. Simon*, 940 N.W.2d 477, 492 (Minn. 2020).

We conclude that under Minnesota law, the presidential nomination primary is not part of the process that Minnesota uses to appoint presidential electors. Because the Electors Clause addresses the appointment of presidential electors, the statutes that govern the presidential nomination primary do not fall within the scope of the clause. As a result, even if the Electors Clause places limits on the manner a state uses to appoint presidential electors, those limits do not apply to the statutes that govern the presidential nomination primary. We therefore hold that petitioners' claim that section 207A.13, subdivision 2(a) violates the Electors Clause fails as a matter of law.

## CONCLUSION

For the foregoing reasons, we deny the petition.

Petition denied.

HENNESY, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.